**MICHENER v. JOHNSTON, Warden.**

No. 10598.

Circuit Court of Appeals, Ninth Circuit.

Feb. 28, 1944.

Edward F. Treadwell, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and A. J. Zirpoli, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT and HEALY, Circuit Judges, and McCORMICK, District Judge.

HEALY, Circuit Judge.

This is an appeal from an order discharging a writ of habeas corpus. The factual question involved is whether the petitioner competently waived his right to the assistance of counsel upon an arraignment. The court below held that he did.

In 1935 an indictment in two counts was returned in the United States Court for the district of Minnesota charging (1) that the petitioner and one Franzeen "did cause and procure to be made" a certain plate in likeness of a plate designed and prepared by direction of the Secretary of the Treasury for the printing of federal reserve notes, and (2) that the accused possessed the plate with intent to use the same in counterfeiting such notes. To this indictment, in May 1936, the petitioner pleaded guilty and was sentenced to imprisonment for fifteen years on each count, the terms of imprisonment to run consecutively. Petitioner was not represented by counsel at the time of his arraignment and sentence.

Application for release on habeas corpus, alleging that the petitioner had not competently waived his right to the assistance of counsel, was filed below in August 1942, and the writ was thereafter issued. At the hearing on return of the writ petitioner testified in his own behalf and was represented there, as he is here, by able and conscientious counsel appointed by the district court. In summary, his testimony was this: He was twenty-nine years of age at the time he was sentenced on the counterfeiting charges. He was then serving a sentence of thirty-five years in the Wisconsin state penitentiary pursuant to a judgment entered in 1935 on a plea of guilty to a charge of forgery.[1] While so confined he was visited by an agent of the Treasury, who asked him to plead guilty to a charge of

---

[1] Petitioner appears to have been released from the Wisconsin penitentiary in 1939, at which time he was taken into Federal custody to serve the sentence imposed by the United States court for Minnesota.

counterfeiting and who gave him to understand that the penalty was fifteen years, which was the most that would be given him. Several months later, after having been brought to Minnesota, petitioner spoke with Assistant United States Attorney Heisey in the latter's office, at which time Heisey asked petitioner and his co-defendant, Franzeen, to plead guilty to the counterfeiting charge. In this conversation Heisey made no mention of counsel or constitutional rights.

Further, petitioner testified that when he was taken before the court for arraignment on the counterfeiting charge the indictment and both counts thereof were read to him by the clerk, and petitioner stated that he understood the charges. He was asked what his plea was and he replied "guilty." Before sentence was passed he pleaded for leniency for his co-defendant Franzeen, and the court then sentenced him as above indicated. He made no protest or comment at that time relative to the sentence imposed; and no mention was made by the court or any of the officials present, either then or previous thereto, of his right to the assistance of counsel. He did not know that he was entitled to have counsel furnished to him on arraignment. Until after sentence was pronounced, he did not know that he was pleading to two separate counts of an indictment punishable as such. Petitioner admitted that at the time of his arraignment he was willing to receive a federal sentence, and preferred that rather than continue serving in the state penitentiary. He makes no claim of coercion.

From the petitioner's testimony it further appears that in 1926 he had been tried and convicted on a felony charge in an Oregon state court, on which occasion he had counsel, employed by his mother. At the time of his plea of guilty to forgery in Wisconsin in 1935, he had $300 and understood he could hire a lawyer if he wanted one, but the charges and possible penalties were fully explained beforehand, and he preferred to plead guilty. He did not, he said, see any need for a lawyer. The matter of counsel was not mentioned at all in the Wisconsin court. Petitioner had had a high school education, and while in the army had studied for admission to the military academy at West Point.

On the other side two depositions were introduced, one of the Treasury agent, Strout, and the other of Assistant United States Attorney Heisey. Strout testified that he visited petitioner twice on consecutive days in the Wisconsin penitentiary, and took notes on the interviews. The conversations pertained to the alleged counterfeiting offenses and other offenses. Strout did not know how many counts there were in the counterfeiting indictment, did not recollect being asked as to the possible sentence, and stated that he could not have told petitioner the extent of the penalty since he did not know what was in the indictment.

Heisey testified that when petitioner and his co-defendant were removed to Minnesota for trial on the counterfeiting charge, he had them brought to his office. According to his "invariable practice" he informed them with reference to the two charges contained in the pending indictment. He says: "I ascertained that they were without any substantial funds, and I told them that *they were entitled to the assistance of counsel in the event they were not guilty and wanted to stand trial,* and that they were entitled to a fair and impartial trial in any event." Upon being assured of this, petitioner in substance stated to Heisey that neither he nor Franzeen, on account of their previous records, had a chance of acquittal, and that it would be unwise for them to cause all of the trouble and expense that would be involved, should they contest their guilt. Petitioner, who wanted to do the bargaining (more especially to bargain on behalf of Franzeen), indicated that both men would be willing to plead guilty to one count, but Heisey insisted that they plead to the whole indictment. He told them that he would make no recommendation of leniency, but that if the men decided to plead guilty to both counts it was his duty to tell the court the whole story of their previous convictions and earlier criminal activities. The two men wanted a few days to think the matter over, and they were thereupon returned to jail. Heisey saw them again on the day of the arraignment and asked them what their decision was. They had decided, they said, to enter pleas of guilty to the whole indictment. Upon the arraignment Heisey informed the court, among other things, that the two defendants "had been informed of their constitutional rights fully, so far as I was concerned, and that both of them had indicated that they did not want counsel." Also, that petitioner was particularly anx-

ious that Franzeen be shown leniency. Heisey was of opinion at the time of these occurrences that the constitutional rights of an accused were personal to himself and that he was required to claim them.

At the conclusion of the hearing on the writ, the court found that in the interviews between Heisey and the accused the latter "were informed of the charges contained in the indictment against them and of the fact that they were entitled to the assistance of counsel in the event they were not guilty and wanted to stand trial, and that petitioner and his co-defendant advised [Heisey] that they deemed it unwise *to secure the assistance of counsel* and cause all the expense and trouble involved." [2] Further, that before sentence was imposed the court heard the petitioner, but made no statement with relation to counsel or the fact that there were two counts in the indictment. As a conclusion of law the court stated that "petitioner by his acts and conduct intelligently, competently and intentionally waived his right of assistance of counsel."

■■ A preliminary question is raised. It is claimed that the first count of the indictment involved every element contained in the second, and that the petitioner after conviction on the first count would, if he were convicted on the second, be subject to double punishment for a single offense. This court held the contrary in Matthews v. Swope, 9 Cir., 111 F.2d 697. In that case the first count charged that the defendant made or caused to be made certain plates with intent to use them for counterfeiting. The second count charged that defendant had possession of the plates with the same intent. It is argued that the decision in Matthews v. Swope was in error, in that proof of manufacture necessarily required also proof of possession.[3] We need not stop to consider the point. In the present situation the petitioner was charged in the first count only with "causing and procuring" the plate to be made. Proof of that count did not necessarily involve proof of possession, and indeed the record inti-

mates that petitioner compelled an engraver, at the point of a pistol, to make the plate. In any event there is no showing that petitioner would now be entitled to his release even though the sentence on the second count be considered void.

■■ But it must be conceded that the point has relevancy for another purpose. The petitioner faced charges on two closely related counts. He was entitled to have the advice of counsel as to whether he should plead guilty to both or whether he should contest the propriety of the separarate charges. Further, it was his right, if he so desired, to have the benefit of counsel's advice concerning the possible cumulative penalties involved in a plea of guilty to both counts. The government does not deny that an accused is entitled to the assistance of counsel upon arraignment, whether he pleads guilty or not. The right to counsel upon arraignment and plea of guilty is undoubtedly within the scope of the guarantee afforded by the Sixth Amendment. Evans v. Rives, 75 U.S.App. D.C. 242, 126 F.2d 633. See also Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830.

■ The substantial question here is whether there was a competent waiver of the right of counsel, that is to say, a relinquishment of the right with adequate knowledge of its existence. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357. It is clear that the petitioner was not fully or properly advised by the Assistant United States Attorney of his constitutional right. Clear, also, it is that the court itself did not advise him thereof. It remains to inquire whether under all the circumstances in evidence an intelligent

---

[2] Compare the italicized phrase of this finding with Heisey's testimony as stated above.

[3] The rule is stated in Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L.Ed. 306, thus: "Where the same act or transaction constitutes a violation of two distinct statutory provi-

sions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of [a] fact which the other does not." This is substantially the rule quoted in Matthews v. Swope, supra, 111 F.2d at page 699 of the opinion, as taken from Remaley v. Swope, 9 Cir., 100 F.2d 31, 33.

waiver may fairly be spelled out; for despite the wisdom and advisability of plainly informing an accused in every case of his constitutional right to counsel, if he sufficiently understands that such is his right it is not a jurisdictional imperative that he be presently reminded thereof.

A judgment is not lightly to be set aside upon collateral attack in a proceeding of this nature. "When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel." Johnson v. Zerbst, supra, 304 U.S. pages 468, 469, 58 S.Ct. page 1025, 82 L.Ed. 1461, 146 A.L.R. 357. In this proceeding the petitioner had the burden of convincing the court of this fact by a preponderance of evidence.

At the hearing below the court had opportunity from personal observation of the petitioner to weigh his credibility, to gauge his intelligence, and to judge fairly the measure and extent of his understanding of his rights as gleaned from his prior experience as well as from what was told him. We would be reluctant to disturb a clear finding of waiver had such a finding been made. But as the matter stands we do not know what was in the court's mind, whether the conclusion of law relating to waiver was thought to flow logically from the information found to have been imparted to the accused by Heisey, or from what source the conclusion was gleaned. Waiver is a question of ultimate fact rather than of law. Certainly, a conclusion that there was an intelligent waiver of the right to the assistance of counsel upon arraignment could not properly be predicated merely on the finding that petitioner had been informed of his right to counsel "in the event he is not guilty and wants to stand trial."

Because we have decided to send the case back for appropriate findings on the subject, one way or the other, we refrain from further discussion of the evidence.

The cause is remanded for further proceedings to be had in the light of this opinion.