## YELVINGTON
### v.
### PRESIDENTIAL PARDON & PAROLE ATTORNEYS.
#### No. 11875.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 21, 1953.

Decided March 18, 1954.

Mr. Edmund L. Jones, Washington, D. C., appointed by this Court, for appellant.

Mr. John P. Arness, Washington, D. C., entered an appearance for appellant.

Mr. E. Riley Casey, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and William J. Peck, Asst. U. S. Atty., Washington, D. C., at the time the brief was filed, were on the brief, for appellees Kenneth V. Harvey and Daniel M. Lyons.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellees.

Before EDGERTON, PRETTYMAN and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

In March of 1952 appellant, while incarcerated in the Federal Penitentiary at Leavenworth, Kansas, applied for executive clemency. Appellees, who are officials of the Department of Justice, notified appellant that his petition did not warrant consideration and would not, therefore, be sent to the President. The present action—entitled "Application for an Order for a Writ of Habeas Corpus-Mandamus"—was then filed in the United States District Court for the District of Columbia. Appellant seeks to compel the appellees, described by him as Presidential Pardon and Parole Attorneys, to submit his petition for clemency to the President. The District Court granted appellees' motion to dismiss. Appeal was taken from that order.

Appellant relies on Section 1.13, Title 28, of the Code of Federal Regulations (1949). That section provides that where a favorable report on a petition for executive clemency is made by either the United States Attorney for the district where the trial took place or by

the sentencing judge [1] the petition and related papers "shall be submitted to the President." Appellant has no proof that a favorable report has been made. In an attempt to secure it he asks for a subpoena of the records of the appellees. But Section 1.15 of the clemency regulations prohibits, except in certain circumstances,[2] the release of these records. Consequently, there is serious doubt as to whether appellant can prove the existence of a favorable report and thus bring himself within the terms of Section 1.13. Cf. United States ex rel. Touhy v. Ragen, 1951, 340 U.S. 462, 71 S.Ct. 416, 95 L. Ed. 417. Even assuming that he can prove it, we think his contentions must fail.

The cited regulations with regard to executive clemency were first published prior to the passage of the Administrative Procedure Act.[3] They are similar, however, to the regulations promulgated by Federal agencies pursuant to the mandate of Section 3 of that Act, which requires each department to publish its organization and procedures in the Federal Register. Such publication has doubtless given the public a better understanding of the operations of the Government. Yet it can hardly be said that this descriptive material has in every context and in every particular the force and effect of statutory law, or that it always operates to create private rights. The instant regulations originated in an order of the Attorney General which was approved by the President. It seems clear that they were primarily intended for the internal guidance of the personnel of the Department

of Justice. Nothing in the regulations says that they are designed to create new and enforceable rights in persons applying for executive clemency. In fact, they imply the contrary. As we have seen, Section 1.15 expressly states that the recommendations of judges and United States Attorneys are to remain confidential. The President and the Attorney General could hardly have intended the regulations to authorize court supervision of the conduct of Department personnel where that would involve disclosure of the very material kept confidential under Section 1.15.

It is doubtless true that the President intended that pardon applications should reach him in every case where the requisites of the regulations had been met. But this intention is not necessarily one which the courts should attempt to enforce. Failure of a subordinate to obey his superior's directions in matters of this sort is ordinarily a matter of internal supervision and discipline. Seldom, if ever, would a court serve a useful purpose by issuing mandamus to a subordinate official to report to a superior or send a particular document to him. Cf. Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95. Other and more practical remedies are usually available.

This reasoning is particularly applicable in the present context. The pardoning power is one which the Constitution expressly vests in the President. Const., Art. II, § 2, cl. 1. As the Supreme Court has said:

"* * * This power of the President is not subject to legisla-

---

1. 28 Code Fed.Regs. § 1.11 (1949) directs that all petitions for clemency shall be submitted to these officials for recommendation and report.

2. 28 Code Fed.Regs. § 1.15 (1949) provides: "*Reports confidential.* Reports to the President by United States attorneys, judges and other officials are confidential, and are not open to inspection by the petitioner or by any other persons, except with the written assent of the attorney, judge, or official making the report, nor, if such assent be given, unless it be shown

that the ends of justice require its disclosure. All other papers, except reports or communications to the President or to the Attorney General by officials, are open to inspection by the petitioner and his attorney or representative." Appellant makes no allegation that one of the reporting officials has consented to the inspection of his report.

3. 60 Stat. 237, 5 U.S.C.A. § 1001 et seq., Act of June 11, 1946. The cited regulations were published on May 2, 1946. 11 Fed.Reg. 4785 (1946).

tive control. \* \* \* The benign prerogative of mercy reposed in him cannot be fettered by any legislative restrictions." Ex parte Garland, 1866, 4 Wall. 333, 71 U.S. 333 at 380, 18 L.Ed. 366.

It should, we think, be free of judicial control, even to the limited extent here proposed. Those who are the President's assistants in this field should not be compelled by court order to submit to him documents in behalf of a particular suitor for clemency, when their own interpretation of his instructions leads them to refrain from so doing. If they have erred, he may correct them. But we do not think we should attempt to do so.

The judgment of the District Court will accordingly be

Affirmed.