Edward B. BISHOP, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12208.

United States Court of Appeals, District of Columbia Circuit.

Argued June 14, 1954.

Decided Feb. 18, 1955.

Mr. Edward J. Skeens, Washington, D. C., for appellant.

Mr. Lewis A. Carroll, Asst. U. S. Atty., with whom Mr. Leo A. Rover, U. S. Atty., and Mr. Edward O. Fennell, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, BAZELON and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from a denial of a motion filed under Section 2255, Title 28, of the United States Code.

Appellant was convicted in 1938—sixteen years ago—of murder in the first degree and was sentenced to death. Thereafter, in 1940, a mental inquisition was held, and he was found to be insane and sent to St. Elizabeths Hospital. In March, 1952, the President commuted the death sentence to "imprisonment for life, to commence upon the date of his commutation." In October, 1952, the Superintendent of St. Elizabeths Hospital certified that Bishop had recovered his reason and was then of sound mind, and discharged him from treatment in the Hospital. He was thereupon returned to the penitentiary to serve the commuted sentence.

Upon the present motion to vacate the judgment of conviction, appellant raises three principal points: (1) that counsel appointed to defend him at the trial was *per se* incompetent; (2) that the defense of insanity was not raised at the trial and that he (Bishop) was of unsound mind at the time of the trial; and (3) that the Bureau of Prisons has unlawfully certified the date of his eligibility for parole as being fifteen years from the date of commutation instead of from the date of the original sentence.

█ 1. Appellant contends that his court-appointed counsel had been admitted to the bar only six months before the trial, had had only two days criminal trial experience prior to the trial and was therefore incompetent to represent an accused in a capital case. The lawyer against whom attack is presently made was joined by another attorney in the conduct of the trial and by three others in the notice of appeal. The competence of counsel is demonstrated by action rather than by inference. The trial was long and the witnesses numerous, and all the Government witnesses were cross-examined. Nine prayers were prepared and presented to the trial court by defense counsel. The defense was vigorously pressed at all stages. The judgment of conviction was appealed to this court, and in an exhaustive opinion by the late Chief Justice Vinson (then Associate Justice of this court), concurred in by then Chief Justice Groner and Associate Justice Edgerton, it was affirmed.[1] We find no merit in the contention that counsel were incompetent.

█ 2. While Bishop makes some reference to insanity at the time of the commission of the crime, which would be a defense to the indictment, this is not the burden of the motion to vacate. The issue of insanity as a defense is presentable upon the trial and appealable if error has been made in respect to it, and a motion to vacate under Section 2255 cannot be used as a substitute for an appeal.[2] Therefore an alleged insanity at the time of the commission of a crime cannot be used as a basis for a motion under Section 2255.[3]

█ Bishop's chief contention in respect to his mental condition is that he was not competent at the time of his trial. The question is whether at the time of trial he was mentally competent to understand the proceedings against him and properly to assist in his own defense. There is a division among the courts upon whether that question can be raised by a motion under Section 2255.[4] In this jurisdiction the question

1. Bishop v. United States, 1939, 71 App. D.C. 132, 107 F.2d 297.

2. Smith v. United States, D.C.Cir., 1950, 88 U.S.App.D.C. 80, 187 F.2d 192, certiorari denied, 1951, 341 U.S. 927, 71 S. Ct. 792, 95 L.Ed. 1358.

3. See Hahn v. United States, 10 Cir., 1949, 178 F.2d 11; Whelchel v. McDonald, 5 Cir., 1949, 176 F.2d 260; Byrd v. Pescor, 8 Cir., 1947, 163 F.2d 775, certiorari denied, 1948, 333 U.S. 846, 68 S.Ct. 648, 92 L.Ed. 1129; Rolfe v. Lloyd, 9 Cir.,

1939, 102 F.2d 606; Hall v. Johnston, 9 Cir., 1936, 86 F.2d 820; Whitney v. Zerbst, 10 Cir., 1933, 62 F.2d 970; Fenton v. Aderhold, 5 Cir., 1930, 44 F.2d 787.

4. Hahn v. United States, 10 Cir., 1949, 178 F.2d 11; Ashley v. Pescor, 8 Cir., 1945, 147 F.2d 318; McMahan v. Hunter, 10 Cir., 1945, 150 F.2d 498, certiorari denied, 1946, 326 U.S. 783, 66 S.Ct. 332, 90 L.Ed. 475; Forthoffer v. Swope, 9 Cir., 1939, 103 F.2d 707; McIntosh v. Pescor, 6 Cir., 1949, 175 F.2d 95.

was answered in Sanders v. Allen.[5] It was established by that case that competency at trial may be raised as an issue on a petition for a writ of *habeas corpus*.

We turn then to determine whether the finding of the District Court that Bishop was competent to stand trial was supported by substantial evidence or was clearly erroneous. The court had before it for consideration:

(a) A presumption of competency at the time of the trial. Bishop had not theretofore been found incompetent.

(b) Bishop's testimony at the trial, as shown by the report of it in the bill of exceptions prepared in elaborate detail by his counsel.[6] He testified at length, in detail, and coherently so far as the record shows. He testified that he had been in the Navy for six or eight months and had worked for W.P.A. for about eighteen months. He met the overwhelming evidence of the eyewitnesses to the murder by the adroit defense of drunkenness. He sturdily withstood a long, severe cross examination. Under examination by the court he talked about divorce, annulment, and other phases of his matrimonial difficulties, explaining that he had discovered his wife had another husband when he (Bishop) married her and that he did not know what to do about the legal situation. He was extremely skillful in his explanation of his possession of the hammer at the time of the murder. The character of Bishop's own testimony at the trial was convincing evidence of his then-capacity to undergo trial and to assist in his own defense.

(c) The facts that the United States Attorney had taken the precaution to have a psychiatrist examine Bishop before the trial and the doctor, a Dr. Evans, made a detailed report in writing, concluding: "This man has no delusions, hallucinations nor anything that would be suggestive of a mental disorder."[7]

(d) The following chain of facts: On October 11, 1938, the aforementioned report of the psychiatrist was made. About a month later, November 15th, Bishop was sentenced to death after a conviction by jury. A year later the conviction and sentence were affirmed by this court. Six weeks thereafter a psychiatrist certified that Bishop was then "suffering from insanity". A jury was impaneled, an inquisition had, Bishop adjudged insane, and the execution of the death sentence suspended "until such time as he is restored to sanity." That was on May 31, 1940. Almost twelve years thereafter, on January 28, 1952, District Judge Jesse C. Adkins, then retired, who had been the trial judge in Bishop's case and was a wise, careful and experienced judge, wrote the Pardon Attorney in the Department of Justice:

"From the opinion of Dr. Winfred Overholser, Superintendent of Saint Elizabeths Hospital and Dr. Bernard A. Cruvant, his assistant, under whose supervision petitioner, Edward C. Bishop, has been for some years, it seems probable that the petitioner will not recover his sanity as long as the death sentence stands, and therefore that the death sen-

---

5. 1938, 69 App.D.C. 307, 100 F.2d 717.

6. Section 2255 specifically provides that the files and record of the criminal case out of which the motion (under Sec. 2255) arises may be consulted by the judge hearing the motion, and thus those files and record are made part of the record in a proceeding on a motion to vacate under Section 2255. Repeated references in the transcript of the proceeding before us make clear that the files and record in the criminal case were before the judge hearing the motion and were examined by him.

7. That Dr. Evans's report was before the court as part of the files and record of the criminal case is established by the facts that (1) counsel at the hearing on the motion in the District Court flatly stated, without contradiction, that the document was in the record and part of the court file, and (2) a copy of it is among the papers certified to this court by the Clerk of the District Court as having been before that court in this proceeding.

tence will never be carried out. Therefore, it seems cruel to let that sentence stand. I recommend that the sentence be commuted to life imprisonment or a term of years not greater than his present life expectancy."

About sixty days thereafter, on March 24, 1952, the President commuted the death sentence to life imprisonment. In seven months, on October 9, 1952, Dr. Overholser certified that Bishop "has recovered his reason and that he is now of sound mind". This chain of events leads to belief that Bishop's mental difficulty might well have been a prison psychosis caused by the shadow of the sentence. It fails to indicate incompetence at time of trial.

(e) The fact that no issue as to competence at the time of trial was raised for more than fifteen years, although the record shows that Bishop's trial lawyers made diligent efforts in his behalf throughout the trial and upon appeal.

■■ (f) The burden of proof upon Bishop, the movant. It is well established that the movant in a collateral attack upon a judgment, especially one affirmed upon appeal, undertakes a severe burden.[8] And this burden is magnified when the attack does not come until fifteen years after the event.

(g) The fact that, this having originally been a capital sentence, this court, upon the appeal from the judgment of conviction, not only considered the points raised by the appellant but examined the whole record for error and made no suggestion of an incompetence on the part of the accused to undergo trial.

(h) On the other hand, and contrary to the foregoing, the 1954 affidavit of

Dr. Overholser, which concludes as follows:

"In view of the foregoing, the historical background of the patient and his family, his almost savage conduct and means used in taking the life of his second wife in contradistinction to his behavior while under my care and treatment during the twelve year period, in addition to the long period required to bring about his full recovery, it is, therefore, my considered professional opinion that Edward B. Bishop was suffering from mental disorder of such degree and nature as to render him legally insane when he took the life of his second wife on July 23, 1938."

■■ Section 2255 provides that upon a motion under it the court must make findings of fact and conclusions of law with respect thereto, unless the motion, files and record conclusively show the prisoner is entitled to no relief. So, when a court acts after a hearing upon a Section 2255 motion based upon incompetency, it must make a specific finding of competency or incompetency. In the case at bar the court made such a finding. That finding was a finding of fact;[9] the conclusion of law with respect thereto was that the motion to vacate should be denied. The question before us is whether we will set aside the finding of competency.

■■ The rule which governs us was stated by the Supreme Court in the Gypsum Co. case.[10] The courts have recognized a difference between the scope of a reviewing court's examination in a review of findings in which the credibility of witnesses is involved, and the scope in a review of findings which rest entirely

8. See Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

9. E. g., Section 4244, Title 18, U.S.C., requires that the court "make a finding" with respect to mental incompetency. And see Ashley v. Pescor, 8 Cir., 1945, 147 F.2d 318; Frame v. Hudspeth, 10 Cir., 1939, 109 F.2d 356, 358–359, reversed on other grounds, 1940, 309 U.S.

632, 60 S.Ct. 712, 84 L.Ed. 989; Hall v. Johnston, 9 Cir., 1939, 103 F.2d 900. And it needs no citation to establish that sanity as an issue in a jury case must be submitted to the jury.

10. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

upon documentary material; but in neither case may an appellate court reverse unless it has a firm conviction of clear error in the findings.[11] We are not to reverse a finding by a trial court, even if upon documentary evidence, unless we conclude that the finding is clearly erroneous on the entire evidence. In the Gypsum Co. case the Court said:

> "Since judicial review of findings of trial courts does not have the statutory or constitutional limitations on judicial review of findings by administrative agencies or by a jury, this Court may reverse findings of fact by a trial court where 'clearly erroneous.' * * * A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." [12]

A trial judge is not supposed to recite the evidence upon which he bases a finding,[13] and the validity of his finding does not depend upon what an appellate court thinks he had in mind at the moment; he is presumed to have had the whole record in mind. There are in many cases ultimate findings that must be supported by intermediate underlying findings. Such was the situation in Kelley v. Everglades District.[14] But every fact—all the way from atomic nuclei to astronomical galaxies—is ultimate to some propositions and underlying to others, and so every fact is underlain by other facts. The law is practical in this respect, and, while it looks for supporting findings to many sorts of ultimate findings, it also deals with many findings as arising directly from the evidence without the interposition of separate supporting findings. This is such a case. The issue was competency, and the conclusion was a direct finding from the evidence as disclosed by the file and the record.

Looking at the evidentiary material which was in the record before the District Court, and which we have briefly described, we think there was substantial evidence from which the District Court could find, as it did find, that Bishop was competent at the time of trial.[15] Certainly we have no "definite and firm conviction that a mistake has been committed." [16]

3. Appellant contends that the President had no power to attach to the commutation order the condition that the life sentence begin to run at the date of the commutation. The practical point

11. See discussion and cases cited in Note to proposed amendment of Rule 52, Rules of Civil Procedure, prepared by the Advisory Committee on Rules for Civil Procedure, May, 1954. And see Engstrom v. Wiley, 9 Cir., 1951, 191 F.2d 684; Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 1945, 148 F.2d 497; Heim v. Universal Pictures Co., 2 Cir., 1946, 154 F.2d 480, 488, 491 (concurring opinion of Judge Clark); Holt v. Werbe, 8 Cir., 1952, 198 F.2d 910, 916–917; Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, Etc., 5 Cir., 1943, 137 F.2d 176, 180–181, affirmed, 1944, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949; Central Ry. Signal Co. v. Longden, 7 Cir., 1952, 194 F.2d 310, 317–318.

12. Supra note 10, 333 U.S. at page 395, 68 S.Ct. 525.

13. United States v. Forness, 2 Cir., 1942, 125 F.2d 928, 942–943, certiorari denied sub nom. City of Salamanca v. United States, 1942, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764; Petterson Lighterage & Towing Corp. v. New York Central R. Co., 2 Cir., 1942, 126 F.2d 992.

14. 1943, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485.

15. See United States v. National Association of Real Estate Boards, 1950, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007; United States v. Oregon Med. Soc., 1952, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978; McAllister v. United States, 1954, 348 U. S. 19, 75 S.Ct. 6, 99 L.Ed. ——.

16. The case at bar does not present the problem of Massey v. Moore, 1954, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. ——. Here the movant had counsel, a hearing was had on the motion, and a finding was made.

in this contention is that a person under a life sentence is eligible for parole at the end of fifteen years. If Bishop's life sentence had begun to run at the time of his original sentence in 1938, he is eligible for parole at the present time. It is settled that the power to pardon is an executive power not subject to judicial review.[17] Moreover it would seem clear that the power to commute the death sentence would necessarily include the power to attach reasonable conditions.

The order of the District Court is Affirmed.

BAZELON, Circuit Judge (dissenting).

The court reaches affirmance by holding that an ultimate determination on the issue of mental competency to stand trial arises "directly from the evidence without the interposition of separate supporting findings." [1] I think this holding erroneous and contrary to decisions in other circuits.[2] The elimination of § 2255's requirement for findings in this case seriously endangers the administration of the statute. The issue of competency to stand trial is not *sui generis*. It is indistinguishable in this respect from other issues reviewable under § 2255—as, for example, whether the prisoner competently waived counsel.[3]

Jurisdiction exists under § 2255 to entertain a collateral attack on the issue of mental competency to stand trial because, as we said in Sanders v. Allen, conviction of any person lacking such competency "violates certain immutable principles of justice which inhere in the very idea of free government." [4] Section 2255 directs that "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court *shall* cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues *and make findings of fact and conclusions of law* with respect thereto." [5] "The issue was competency," as this court says, 223 F.2d 587. This court holds that the trial court need only determine the issue. The statute says it must determine the issue *and* make findings of fact.

In the present case, notice was served upon the United States Attorney, a hearing was held at which no evidence was introduced, and the court made findings of fact and conclusions of law. Plainly, it did not conclusively appear that appellant was entitled to no relief. Accordingly, the trial judge made two findings bearing upon appellant's mental competency to stand trial: one purporting to support the ultimate determination, set forth in a conclusion of law, that appellant was of "sound mind"; [6] the other contrary thereto. Since both findings are drawn solely from the written evidence, "we are as able as [the trial judge]

**17.** Yelvington v. *Presidential Pardon & Parole Attorneys*, D.C.Cir., 1954, 94 U.S. App.D.C. 2, 211 F.2d 642; Stroud v. Johnston, 9 Cir., 1943, 139 F.2d 171, certiorari denied, 1944, 321 U.S. 796, 64 S. Ct. 846, 88 L.Ed. 1085; Bozel v. United States, 6 Cir., 1943, 139 F.2d 153, certiorari denied, 1944, 321 U.S. 800, 64 S.Ct. 120, 88 L.Ed. 1087; Lupo v. Zerbst, 5 Cir., 1937, 92 F.2d 362, certiorari denied, 1938, 303 U.S. 646, 58 S.Ct. 645, 82 L. Ed. 1108.

**1.** Majority opinion, 223 F.2d 587.

**2.** See Michener v. United States, 8 Cir., 1949, 177 F.2d 422; and United States v. Cook, 7 Cir., 1953, 208 F.2d 114, holding that determinations under 28 U.S.C. § 2255 must be supported by findings of fact.

**3.** See Michener v. Johnston, 9 Cir., 1944, 141 F.2d 171, where in a habeas corpus case the court remanded for appropriate findings on the question of waiver of counsel, although the trial court had stated as a conclusion of law that there had been a waiver.

**4.** 1938, 69 App.D.C. 307, 310, 100 F.2d 717, 720.

**5.** 28 U.S.C. § 2255 (1952), emphasis supplied.

**6.** Conclusion of Law No. 3: "Because prisoner was of sound mind he was not subjected to the hazards and jeopardy of trial by jury in violation of the due process clause of the fifth amendment to the federal constitution."

to determine credibility." [7] Hence our consideration of these findings is not weighted by the trial court's assessment of credibility. So viewed, I think the only supporting finding is clearly erroneous. I therefore conclude that in the absence of any finding to support the trial court's ultimate determination, the case must be reversed and remanded for further proceedings.

## I.

The finding, upon which the trial judge solely relied for his ultimate determination, is clearly erroneous because it is based upon an erroneous reading of the written report of Dr. Evans, a psychiatrist:

> Finding of Fact No. 3: "A mental examination of the prisoner was made by Dr. A. B. Evans, M. D., October 11, 1938, approximately two weeks before trial, which reflects his opinion that prisoner was of low mentality but could discern no symptoms that would suggest a mental disorder and was competent to stand trial." [8]

Dr. Evans' report does not deal with the question of appellant's competency to stand trial. It states, *inter alia*, that appellant was taken out of school at the age of 14 or 15 when he was in the fourth grade, that he stayed in one grade four or five years, that his mother and sister died from poison which they took, and that he did not believe he killed his wife. It cites examples of the patient's answers to simple questions: "He [the patient] said three plus seven plus nine equals 20. In naming the months of the year he omitted two. Could not give the significance of any holiday. He could give the day of the week and year but not the month [presumably at the time of the examination]. He wrote his name, which was very legible." No mention is made of any possibility that the patient was feigning ignorance and malingering. The report concludes as follows:

> "This man has no delusions, hallucinations, nor anything that would be suggestive of a mental disorder. He is however of rather low intelligence. He has been very shiftless and has always made a very poor economic adjustment when not supervised by his family. There is a suggestion that this patient is somewhat feeble-minded, probably in the high grade moron group. I am having a psychometric examination made in order to determine his exact mental age. It is felt that this is not of sufficient degree to affect his responsibility."

In finding a "suggestion that [appellant was] somewhat feeble-minded," Dr. Evans indicated that a final determination would await completion of a psychometric examination. Therefore, his statement that appellant's feeble-mindedness was "felt * * * not [to be] of sufficient degree to affect his responsibility" was tentative, pending the outcome of the examination. Since the outcome does not appear in the record, and Dr. Evans' impression remained tentative, his statement was entitled to little or no weight in the present inquiry.

7. Dollar v. Land, 1950, 87 U.S.App.D.C. 214, 218, 184 F.2d 245, 249, quoting from Orvis v. Higgins, 2 Cir., 1950, 180 F. 2d 537, 539. See United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

8. Under § 2255 "the files and records of the case" may be consulted by the court in determining whether the movant is entitled to relief. This report, although included in the record on appeal, was not, as Government counsel represented to the trial court, a "part of the Court file." This report, dated October 11, 1938, and addressed to the then United States Attorney is not stamped as filed with the court, nor is its filing noted on the sheet of docket entries in the case. It bears only a stamp indicating its receipt by the United States Attorney's office together with that office's file number. Since it was not a "part of the Court file," prior to the filing of the motion under § 2255, and was not admitted in evidence thereafter under applicable safeguards, its consideration by the trial judge was error.

More important, there is nothing in the report or in the record to indicate what Dr. Evans meant by "responsibility." That term commonly refers to mental condition at the time of the offense, not competency to stand trial. "Responsibility" in that sense is pertinent only upon a plea of insanity at the trial as a defense to the crime charged; and the tests then applicable in this jurisdiction were the "right and wrong" and "irresistible impulse" tests. Competency to stand trial depended, and still depends, upon very different considerations; the ability of the accused to understand his situation and assist in his defense.[9]

The only other finding of the trial judge relating to the issue of appellant's mental competency to stand trial supports an ultimate determination contrary to the one the trial judge reached:

> Finding of Fact No. 5: "There is evidence, based upon expert opinion that the prisoner was of unsound mind at the time that the offense was committed, and for approximately twelve years after his conviction."

This finding is drawn from the affidavits of two psychiatrists. The first, made by Dr. Elmer Klein, is dated December 27, 1939—a little more than a year after trial—and provided the basis upon which the District Court ordered the lunacy inquisition which resulted in the adjudication of insanity in May 1940.[10] This affidavit does not contain any conclusions respecting criminal responsibility or competency to stand trial since it was intended merely as a basis for institution of a lunacy inquisition and for that purpose such matters are not pertinent. Instead, it merely states, in pertinent part, that the affiant made an examination and "gave the said Edward B. Bishop a psychological test, that as a result of this examination and test [affiant] is of the opinion that said Bishop is suffering from gross mental deficiency, that he has the mentality of an eight year old child, that in addition to his feeblemindedness he is suffering from insanity as well * * *." While it is not made perfectly clear whether this determination of exact mental age was based upon the sort of psychometric examination which Dr. Evans' report contemplated, the context strongly indicates that it was.

The second affidavit was made by Dr. Winfred Overholser, Superintendent of St. Elizabeths Hospital, to which appellant was committed upon his adjudication of insanity in May 1940. Although this affidavit is dated February 16, 1954, it is based upon close expert observation of appellant for a twelve-year period, commencing with his commitment to the Hospital until his release therefrom to the District jail in October 1952. This affidavit, like all the others in the record, states no opinion regarding appellant's competency to stand trial when he was tried and sentenced. But it concludes that in the opinion of the affiant, appellant "was suffering from mental disorder of such degree and nature as to render

9. In Brewer v. Hunter, 10 Cir., 1947, 163 F.2d 341, 344, the Court of Appeals, in holding that the evidence adduced in a habeas corpus proceeding adequately established that appellant was mentally competent when tried, observed that the applicable test was whether "he is capable of distinguishing between right and wrong at the time and with respect to the act committed." Subsequently, however, in Moss v. Hunter, 10 Cir., 167 F.2d 683, 685, certiorari denied, 1948, 334 U.S. 860, 68 S.Ct. 1519, 92 L.Ed. 1780, the same court noted "that the applicable test in these circumstances is whether an accused has the mental capacity to comprehend his own condition with reference to the accusation pending against him and is capable of rationally conducting his defense." The court acknowledged its error in the Brewer case, supra, observing that the right and wrong test "although abstractly correct, had no application to the question before us in that case."

10. This affidavit, unlike the report of Dr. Evans, throws light upon the qualifications of the examining doctor. It states that the affiant is "a physician specializing in mental diseases and that he is a member of the District of Columbia Commission on Mental Health.

him legally insane" at the time of the crime.

While Dr. Evans' report, which was based upon a single examination, disclosed "no delusions, hallucinations, nor anything suggestive of a mental disorder," Dr. Overholser's twelve-year hospital study disclosed, *inter alia,* that appellant had "convulsive seizures from early childhood [which] had gradually lessened in frequency * * * [and] were supplanted during the more recent years by what appeared to be petit mal seizures and possibly visual hallucinations. He could not progress beyond the second year of grade school, and had always been regarded as a defective. * * * During the early part of his residence in this Hospital, he was diagnosed as a case of psychosis with mental deficiency." [11]

I do not understand how it can be assumed that the "feeble-mindedness [and] insanity," which Dr. Klein diagnosed about a year after trial and which was confirmed shortly thereafter by the St. Elizabeths diagnosis of "psychosis with mental deficiency," was significantly different at the time of trial.

## II.

As I have already pointed out, the trial judge recognized that because it did not conclusively appear from "the motion and the files and records of the case * * * that [appellant was] entitled to no relief * * *," he was required by § 2255 to make findings of fact and conclusions of law. Nevertheless, this court refuses to decide whether his conclusion of law— that appellant was of "sound mind" when

tried—is supported by his findings of fact. It avoids such a decision by treating the conclusion as a finding of fact and one of such a special character that it may be supported directly by any evidence in the record without the interposition of supporting findings. But § 2255 requires findings of fact with respect to "the issues." It makes no exception. And this court offers neither reasoning nor authority for making an exception of the issue of mental competence. Based upon this view, the court then concludes that supporting findings would amount to no more than a recitation of the evidence. "A trial judge", it says, "is not supposed to recite the evidence upon which he bases a finding." [12] But when the court refers to the evidence for support of the ultimate determination made below, it not only recites the evidence but draws fresh inferences therefrom. These inferences, of course, are original supporting findings of fact.

Thus, referring to the transcript of the trial proceedings in 1938 and the bill of exceptions filed on the appeal from the conviction, the court declares that the "character of Bishop's own testimony at the trial was convincing evidence of his then-capacity to undergo trial and to assist in his own defense." [13] Not only is this an inference from, rather than a mere recital of, the evidence, but these records were not before the trial court. They were in Archives at the time of the § 2255 hearing. [14] The court also refers to a letter, from the district judge who presided at the trial to the pardon attorney, which was written about fourteen years after the trial and in which the

---

11. Concerning appellant's recovery after twelve years of hospitalization, the affidavit states: his hospital adjustment and performance over a period of years led to an increasing doubt as to the existence of actual irreversible mental deficiency, in spite of the fact that intelligence tests during the early part of his hospitalization placed him in the mental defective category. On account of the increasing doubt about his being a true defective, he was re-examined in May of 1948, and it was found that at that time his functional level of performance was

within normal limits. It was suggested that the discrepancy between the defective test achievement at the time of his admission and normal results in 1948 indicated a strong functional component in his mental illness.

12. Majority opinion, 223 F.2d 587.

13. Majority opinion, 223 F.2d 585.

14. They left Archives for the first time in December 1954 when requested by this court long after the appeal had been argued.

judge recommends commutation of the death sentence because "it seems probable that [Bishop] will not recover his sanity as long as the death sentence stands, and * * * therefore, it seems cruel to let that sentence stand." From this letter and the fact that some months after it was written Bishop was declared sane by St. Elizabeths Hospital authorities, this court draws the inference "that Bishop's mental difficulty might well have been a prison psychosis caused by the shadow of the death sentence" and "fails to indicate incompetence at time of trial."[15]

There is serious doubt that any judge —trial or appellate—should draw such inferences from such evidence, without the assistance of expert psychiatric opinion. But even if such inferences can be drawn without such assistance, it seems clear to me that they should not be drawn in the first instance by appellate judges. In Kelley v. Everglades Drainage District, the Supreme Court held a bankruptcy court had not made findings of fact as required by Rule 52(a), Federal Rules of Civil Procedure.[16] After listing appropriate facts which might have been considered but, like the missing facts here, were "nowhere referred to in the opinion or findings below * * *," the Court said:

"* * * It may be that adequate evidence as to these matters is in the present record. On that we do not pass, for it is not the function of this court to search the record and analyze the evidence in order to supply findings which the trial court failed to make. * * * We hold * * * that there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion."[17]

In Michener v. United States, the Eighth Circuit ascribed the following purposes to § 2255's requirement of findings: "(1) to enable the appellate court to determine the grounds upon which the trial court reached its decision; (2) to enable the defeated party to determine whether the case presents a question worthy of consideration by the appellate court; and (3) to spare the appellate court the necessity of searching the record in order to supply findings of fact."[18] It is evident that none of these purposes is served by a naked conclusion that appellant was of sound mind when tried.

Another reason for requiring findings here is suggested by our decision in Quinn v. United States. There we were urged to affirm a criminal conviction on a ground not considered below. Although all the evidence bearing upon that ground was included in the record on appeal, we declined to make an original finding of fact, an important reason being that

"* * * one of the substantial rights accorded a criminal defendant by statute in the federal courts is the right of appeal. Were this court to affirm the conviction on a finding not considered below, the defendant would in effect be deprived of that right, for our finding, in the first instance, on the main issue, would be subject to review only on the grant of *certiorari* by the Supreme Court."[19]

The findings which this court makes are, at least, doubtful. Yet they can be

15. Majority opinion, 223 F.2d 586.

16. 1943, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485. In Michener v. United States, 8 Cir., 1949, 177 F.2d 422, 424, the court compared the finding requirement of Rule 52(a) with that of § 2255.

17. 319 U.S. at page 421–422, 63 S.Ct. at page 1145. See also Interstate Circuit, Inc., v. United States, 1938, 304 U.S. 55, 56, 58 S.Ct. 768, 769, 82 L.Ed. 1146, where the Supreme Court held that statements in the decree of the Dis-

trict Court were "but ultimate conclusions and did not dispense with the necessity of properly formulating the underlying findings of fact." The Court made no attempt to resolve these underlying factual issues but remanded the case for appropriate findings of fact and conclusions of law.

18. 177 F.2d at page 424.

19. 1952, 91 U.S.App.D.C. 344, 349, 203 F.2d 20, 25, certiorari granted, 1954, 347 U.S. 1008, 74 S.Ct. 861.

reviewed "only on the grant of *certiorari* by the Supreme Court." Patently, this diminishes the right of appeal to the court of appeals which is specifically conferred by § 2255.[20]

I would reverse and remand with directions to make findings as required by the statute. And because, as I have tried to show, the evidence presently in the record is an inadequate basis for a rational determination on the issue of appellant's competency to stand trial, I would also direct that the parties be given the opportunity to present additional evidence. And if, for example, the trial court were to determine that appellant had an eight-year-old mentality, it could then require submission of the sort of evidence essential to a factual determination of the question whether this circumstance, alone or in combination with others, deprived appellant of the capacity to stand trial, considering, of course, the specific nature of the charges against him.

---

20. Section 2255 provides:
"An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." The district court's factual determinations are reviewable on appeal from the denial of habeas corpus relief. See e. g.,

Johnson v. Sayre, 1895, 158 U.S. 109, 115–116, 15 S.Ct. 773, 39 L.Ed. 914; Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309; cf. United States ex rel. Kassin v. Mulligan, 1935, 295 U.S. 396, 402, 55 S.Ct. 781, 79 L.Ed. 1501.