James BOSTIC, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16405.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 20, 1961.

Decided Dec. 7, 1961.

Mr. Edward J. Skeens, Washington, D. C., for appellant.

Miss Doris H. Spangenburg, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Charles T. Duncan and Luke Moore, Asst. U. S. Attys., were on the brief, for appellee. Mr. Daniel J. McTague, Asst. U. S. Atty., also entered an appearance for appellee.

Before EDGERTON, WASHINGTON and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from the denial by the District Court, without a hearing, of Bostic's petition to vacate his conviction and sentence, under Section 2255 of Title 28 of the United States Code.

Bostic was convicted in 1937 of first degree murder and was sentenced to death by electrocution. After an unsuccessful appeal[1] and a number of motions, a lunacy inquisition was held in 1940. Bostic was found insane, and was committed to St. Elizabeths Hospital. His execution was ordered suspended until restoration of his sanity. He remained at St. Elizabeths until 1949, at which time a second lunacy hearing was held. He was again adjudged of unsound mind and recommitted to St. Elizabeths. In 1951, the President commuted his sentence to imprisonment for ninety-nine years. Shortly thereafter, appellant was transferred to the Federal Penitentiary at Atlanta, Georgia, where he is presently incarcerated.

Bostic's principal contention is that he was entitled to a hearing on the issue of his competency to stand trial, under the holding of the Supreme Court in Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), reversing 96 U.S.App.D.C. 117, 223 F.2d 582 (1955). We think this contention must be sustained. Section 2255 of Title 28 of the Code directs that "Unless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, *grant a prompt hearing thereon*, determine the issues and make findings of fact and conclusions of law with respect thereto." (Emphasis added.) Here we think the District Court erred in holding that the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Bostic's petition urges that he was incompetent to stand trial, pointing to psychiatric testimony adduced at his

lunacy hearings in 1940 and 1949 that (1) in 1940, three years after the time of his trial, he was an imbecile with a mental age of six years and one month, and that (2) he had suffered during most of his childhood and his adult life from epilepsy with psychosis (primarily of a manic nature), with a history of alcoholism, inadequate interpretation of facts, hallucinations, and epileptic seizures occurring about twice a month. Nineteen lay witnesses testified in 1940 to a continuing history of mental unsoundness or insanity. The petition asks that seven psychiatrists who testified in 1940 and 1949 be subpoenaed for a Section 2255 hearing.

This showing, under the Bishop case, entitles Bostic to a hearing. Bishop was convicted in 1938 of first degree murder, was committed to St. Elizabeths in 1940, and received a Presidential commutation of his death sentence. Although Bishop did not file his Section 2255 petition until more than sixteen years after his conviction, the Supreme Court held that he was entitled to a hearing on the question of his sanity at the time of trial. In the Bishop case, as here, there was no direct evidence before the District Court on the precise issue of competency at the time of trial. Bishop filed his petition in the District Court on March 12, 1954, attaching to it an affidavit by Dr. Overholser, Superintendent of St. Elizabeths, dated February 16, 1954. In it Dr. Overholser concluded that Bishop was insane when he took the life of his wife. "This affidavit, like all the others in the record, states no opinion regarding appellant's competency to stand trial when he was tried and sentenced." Bishop v. United States, 96 U.S.App.D.C. at 125, 223 F.2d at 590 (dissenting opinion). Our decision in the Bishop case was rendered on February 18, 1955. Bishop petitioned for certiorari, attaching to his petition in the Supreme Court a new affidavit in which Dr. Overholser restated his previous conclusion that Bishop was insane at the

---

1. Bostic v. United States 68 App.D.C. 167, 94 F.2d 636 (1937), cert. denied 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1005 (1938).

time of the offense, and went on to say "that, in addition thereto, Bishop was not mentally competent to stand trial \* \*." This new statement as to incompetency had never, of course, been placed before the District Court or this court. On February 27, 1956, without having heard argument, the Supreme Court summarily vacated the judgment and remanded the case to the District Court "for a hearing on the sanity of the petitioner at the time of his trial." 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835. We cannot assume that the Supreme Court based its holding solely, or even at all, on the new affidavit, which had never been seen by the District Court or this court.

In the Bishop case, as here, a psychiatrist who had examined the defendant shortly before trial had found no signs of mental disorder. There, we pointed out that "the United States Attorney had taken the precaution to have a psychiatrist examine Bishop before the trial and the doctor, a Dr. Evans, made a detailed report in writing, concluding: 'This man has no delusions, hallucinations nor anything that would be suggestive of a mental disorder.'" Bishop v. United States, 96 U.S.App.D.C. at 120, 223 F.2d at 585. In the instant case, Dr. Roger Cohen, testifying at the 1940 lunacy hearing, said only that Bostic "was of sound mind." He gave only this naked conclusion, did not explain it, made no statement as to competency, gave no data to support his diagnosis, and did not disclose the extent of his examination.

The nature of the evidence of Bishop's competency of course differs somewhat from that presented in this case, but in some ways Bostic has already made a stronger showing. Appellant here can show, as Bishop could not, two adjudications of lunacy, a mental age of six, a lifelong history of mental unsoundness testified to by nineteen lay witnesses, and an epileptoid condition. At the least, appellant's proffered evidence, including the two findings of lunacy, indicates that he was surely of very low intelligence—and apparently suffering from a mental defect—during the period of his trial, and that there may well have been present a mental illness or abnormality of such nature as to make it difficult or impossible for him to assist rationally in his own defense. The Government relies on the apparent rationality of Bostic's testimony at his trial and the failure of Bostic or his counsel to allege incompetency before now. But in the Bishop case, this court was reversed when it relied on precisely such circumstances. We pointed out that Bishop "testified at length, in detail, and coherently \* \* \*. He sturdily withstood a long, severe cross examination."[2] 96 U.S.App.D.C. at 120, 223 F.2d at 585. Similarly, "no issue as to competence \* \* \* was raised for more than fifteen years, although the record shows that Bishop's trial lawyers made diligent efforts in his behalf throughout the trial and upon appeal." 96 U.S.App.D.C. at 121, 223 F.2d at 586. In the light of Bostic's proffered evidence, trial counsel's failure to allege incompetency and the Government's description of Bostic's testimony as "rational" can scarcely be regarded as conclusively demonstrating that the prisoner was entitled to no relief. At the most, they raise an issue of fact as to appellant's competency, and Bostic —on the showing he has made—is entitled to a hearing on that issue. "Genuine issues of material fact, raised in a proceeding under Section 2255, cannot be resolved without a hearing, followed by findings of fact and conclusions of law." Adams v. United States, 95 U.S.App.D.C. 354, at 356, 222 F.2d 45, at 47 (1955). Our conclusion is amply supported not only by the Bishop case, but by cases in other Circuits.[3]

---

2. Evidence of apparent rationality in testimony was found insufficient to justify denial of a hearing in Taylor v. United States, 282 F.2d 16 (8th Cir.1960), and Smith v. United States, 267 F.2d 210 (9th Cir.1959).

3. See Taylor v. United States, supra note 2; Bell v. United States, 269 F.2d 419 (9th Cir.1959); Gregori v. United States, 243 F.2d 47 (5th Cir.1957); Sanders v. United States, 205 F.2d 399 (5th Cir. 1953). The fact pattern in these cases

The District Court was concerned with the length of time which elapsed before the issue of competency was raised, and the practical consequences of that delay. But Section 2255 explicitly states: "A motion for such relief may be made at any time." And appellant's mental condition may well be found to excuse his delay. Cf. Taylor v. United States, supra note 2, 282 F.2d at 23. Nor does the case law on the delay issue support the District Court. See, e. g., Bishop v. United States, supra; United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). We will accordingly remand the case for a hearing. Whether the hearing will show that Bostic is entitled to relief is something we cannot now anticipate or express any view about.

Other contentions made by appellant must be rejected. He argues that he is entitled to a new trial on the basis of the lunacy inquisitions held in 1940 and 1949, without the necessity of a further hearing. It seems clear, however, that these proceedings did not decide that appellant was incompetent to stand trial in 1937, or that he was not proved to have been sane at the time of the crime. Appellant is stretching his point too far when he claims that the 1940 and 1949 hearings adjudicated his mental capacity "at the time of sentence, the trial * * * and his entire youthful life." Appellant also asks for a new trial pursuant to either Fed.R.Crim.P. 33, 18 U.S.C.A., or 28 U.S.C. § 1651, on the basis that he was insane at the time of the crime. But there is no showing of new evidence on this issue not available to appellant at time of trial or shortly thereafter. See Bishop v. United States, 96 U.S.App.D.C. 117, 119, 223 F.2d 582, 584 (1955).[4]

Finally, appellant challenges his incarceration at Atlanta, urging that he should have been kept in a mental hospital. However, 18 U.S.C. § 4242, governing the retransfer of an insane or sick defendant from a mental institution to prison, would seem to have been complied with. It appears that a medical determination was in fact made of Bostic's restoration to sanity before his transfer to the Atlanta Penitentiary. We do not perceive any basis for relief in this regard, at least on the papers before us.

The order of the District Court will be set aside, and the case remanded for a hearing on the issue of Bostic's competency to stand trial.

So ordered.

BURGER, Circuit Judge (dissenting).

I agree that passage of time, whether five years or twenty-five years, cannot affect valid claims under § 2255. That is what Congress meant and that is as it should be. The issue here is whether District Courts are to be stripped of what limited discretion Congress gave them under § 2255.

That statute provides when an application for relief is made the District Court must grant a hearing "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief * * *." Section 2255, unlike 18 U.S.C. § 4245 (1958), which *commands* a hearing, thus calls upon the sentencing judge to weigh and evaluate everything before him in the record, including what the petitioner claims or tenders, to determine whether a hearing is required. It plainly vests some measure of discretion, some power of evaluation in the District Court, or

in strikingly similar to the instant case. In general, the petitions filed in the District Court under Section 2255 alleged a history of mental illness, but adduced no direct evidence of incompetency to stand trial during the period of trial. The District Court in each instance denied a hearing on the issue of incompetency to stand trial, and was reversed on appeal. Other cases ordering a hearing in

somewhat similar circumstances are Norman v. United States, 276 F.2d 377 (9th Cir.1960), and Smith v. United States, supra note 2.

4. The holding of this court on this question in Bishop does not seem to us to be affected by the subsequent action of the Supreme Court in 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).

otherwise the statute would simply have directed a hearing in every case. Perhaps that is what Congress should have done in § 2255 as it did expressly in 18 U.S.C. § 4245 (1958), which requires a hearing whenever the Bureau of Prisons certifies that a prisoner in its care was probably incompetent at the time of trial. Be that as it may, the majority now amends § 2255 to "correct" this omission, for as I read the record and the statute, the District Court has exercised its discretion and we must affirm unless we find an abuse of discretion.

Bostic was tried in 1937 but only after a psychiatrist of the Mental Health Commission had examined him and pronounced him "of sound mind" three days before trial. The District Court files reflect that the trial judge, and defense counsel, as well as the others who observed him throughout the trial of a capital case, apparently shared the psychiatric opinion that Bostic was of sound mind for none of these persons are tendered as holding any other view. Nearly 25 years have elapsed and Bostic now contends that because mental examinations in 1940 and 1949 showed that he then had mental disorders, he was incompetent to be tried in 1937. This manifestation of mental disorder was thus after he had spent years in the "death house" awaiting the execution which after long delay and many stays of execution was commuted by presidential action.

I particularly take issue with the suggestion that Dr. Cohen's 1937 opinion that Bostic was "of sound mind" was of little value and was not an opinion on competency to stand trial. Several opinions of this court emphasize that competency to stand trial is quite different from and calls for a lesser standard, for example, than capacity to be found guilty. Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959), cert. denied 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961); Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957), cert. denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958); Blunt v. United States, 100 U.S.App.D.C. 266, 244 F.2d

355 (1957). A person suffering from a mental disease of severe proportions may, and often is, found competent to stand trial since 18 U.S.C. § 4244 (1958) requires only that he be able "to understand the proceedings against him or properly to assist in his own defense * * *." Hence, if a person is "of sound mind" he is, a fortiori, competent to stand trial.

The present holding intimates that the processes for pre-trial examinations of an accused under § 4244 to determine whether he can fairly be tried, and the affirmative conclusions of psychiatrists, somehow become obsolete with the passage of time. What this holding may well mean is that no application raising the issue of competency to stand trial can be resolved without a hearing.