Gerald Lionel STONE, Petitioner,

v.

UNITED STATES of America,
Respondent.

Crim. No. 24234.

United States District Court
S. D. California,
Central Division.

Aug. 2, 1960.

Laughlin E. Waters, U. S. Atty., and Robert J. Jenson, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Maurice Goodstein, Los Angeles, Cal., for defendant.

HALL, Chief Judge.

This is a proceeding under 28 U.S.C. § 2255.

The sole ground on which it is based is that the defendant (Petitioner) was insane at the time of entering his plea of guilty.

On April 27, 1955, the defendant was indicted in three counts for three separate bank robberies. In Count I it was charged that he put in jeopardy the life of Jerry Lee Caraco, and in Count III it was charged that he put in jeopardy the life of Leonore Rennie.

On arraignment on May 2, 1955, it appearing that the defendant was without funds or property with which to employ counsel of his own choosing, the Court appointed Mr. Maurice Goodstein as his counsel. Thereafter, upon observation by the Court of defendant, the Court suggested to Mr. Goodstein that he give consideration as to whether or not the defendant should be psychiatrically examined. After continuance of one week, the Court appointed Dr. Edwin McNeil, an able and competent psychiatrist of long and wide experience, to examine the defendant, and report concerning whether the defendant was then

presently insane, or unable to understand the proceedings against him, or unable to properly assist in his own defense. The examination was made on May 13, 1955, from 3:00 P.M. to 5:00 P.M.

The doctor reported his conclusions on May 16, 1955, as follows:

"At the time I examined this man he was oriented. He answered questions promptly, relevantly and coherently. He was not suffering from any delusions or hallucinations. He was not pathologically elated or depressed. He had memory of the events which led up to his arrest. In my opinion, he gave some of the defensive type of rationalizations which individuals involved in criminal behavior often express. However, in my opinion, there was no evidence of any major mental disturbance or psychosis.

"In my opinion, the defendant is presently mentally competent. In my opinion, the defendant is presently sane; the defendant is able to understand the proceedings against him; the defendant is able to properly assist in his own defense in Case No. 24,234–CD."

The matter was put over from May 16, 1955 to May 23, 1955 to enable counsel for both sides to read the report and to interview the doctor if they desired.

On May 23, 1955 counsel for defendant indicated that he had read the report, and was ready to proceed with the plea of the defendant. Defendant thereupon pleaded guilty to all three counts of the Indictment, the Court interrogated the defendant, accepted his plea of guilty, and the matter was put over for sentence to June 30, 1955, at which time the defendant was sentenced.[1]

1. While the sentence in this case was severe, the record of defendant's past crimes, beginning in 1951, as well as the violence attendant upon some of his crimes, made it imperative in the judgment of the Court, that the defendant be isolated from society as long as possible for the protection of society. Portions of the Probation Report are as follows:

"*Offense:* The defendant has pleaded guilty to a three Count Indictment charging robbery of National Bank, use of dangerous weapon.

"Count I charges that on or about March 30, 1955, in Lakewood, California, the defendant by force and violence and by intimidation, did knowingly and wilfully take from the person and presence of another, the sum of approximately $1,261.00 belonging to and in the care and custody, control, management, and possession of a bank, namely: the Peoples Bank, Lakewood Center Branch, Lakewood, California. In committing this offense, the defendant did assault and put in jeopardy the life of another by the use of a dangerous weapon and device, namely: a .32 caliber Colt automatic pistol.

"Count II is a similar offense and it occurred on or about March 31, 1955, in Los Angeles, California, when the defendant robbed the Security-First National Bank of Los Angeles, 47th and Broadway Branch, of $297.00. In the commission of this offense, a gun was not used.

"Count III charges that on or about April 8, 1955, the defendant did knowingly and wilfully take from the person and presence of another, the sum of approximately $925.00 belonging to, and in the care, custody, control, management, and possession of, a bank, namely: The Security-First National Bank of Los Angeles, Lake and Colorado Branch, Pasadena, California. In committing this offense the defendant did assault and put in jeopardy the life of another by the use of a dangerous weapon and device, namely: a .32 caliber Colt automatic pistol.

"After subject was apprehended following the robbery of the Security-First National Bank of Los Angeles, Lake and Colorado Branch, Pasadena, California, he stated "I was born July 25, 1935, in Los Angeles, California.

"On April 8, 1955, I drove a 1941 Ford 2 door sedan to Pasadena, California. This car was a 'loaner' car that was loaned to me by the South Garage located at Rosecranz and Lakewood Boulevard. My 1949 Lincoln 2-door Cosmopolitan car is at that garage being repaired.

"When I drove to Pasadena I intended to rob a bank, and decided on the Colorado-Lake Branch of the Security.

"I prepared a note at my home during the morning of April 8, 1955 as I had this

A Reporter's complete transcript of all proceedings to time of sentence is attached hereto and made a part hereof, and marked Exhibit "A".

note with me as well as a nickle plated .32 cal automatic that was loaded.

"I parked the 1941 Ford on El Molina St. near Green and entered the Colorado-Lake Branch at approx 3:30 P.M. I also had a tan leather brief case that I intended to carry the money that I secured from the bank.

"I went to the first teller on the left as I entered the bank and waited in line. There were about 9 people ahead of me. When it was my turn I laid the brief case on the counter and took the note from my wallet and laid it on the counter. The note said 'This is a holdup. Empty the drawer starting with large bills comply and no one will get hurt. Wait 3 min. after I leave.'

"The woman teller read the note and looked at me and she grabbed the money and put it in one pile. She then put the money in the brief case. After she finished I buckled the case and walked out of the front entrance of the bank.

"I had the .32 auto in my waist band of my trousers on the left side but I didn't take the gun out while I was in the bank.

"I headed east on Colorado then south on Mentor St. I was running now and I pulled the gun out so that I could run faster.

"I heard someone yell 'Stop that man' as I turned right or south on Mentor St. I then ran left or east on Green and I saw a policeman in a patrol car who yelled 'freeze right where you are.' The policeman held a gun pointed at me. I then started walking and the policeman said he would shoot if I didn't stop. I then turned around and headed west on Green St. The policeman shot at me then and I crossed Green Street still heading west. By this time the policeman had fired about 3 shots. I turned and *attempted to shoot* at the policeman but the gun didn't fire. I then noticed a man running toward me and *I pointed the gun at him but it didn't fire* although I tried to shoot it. The man stopped at this point. By this time the policeman was chasing me on foot so I turned south on Mentor on the east side of the street. I then ran into a driveway between the buildings and dropped the brief case containing the money. I went back of the bldg. and tried the door and went into the men's wash room and locked the door.

"About 3 min. later the policeman came in and I tried to hide behind the door.

The policeman told me to hand the gun out which I did and I was then arrested and taken to the Pasadena City Jail. I thought that there was a cartridge in the chamber of the gun and when I pointed the gun at the policeman and the other man who was chasing me I intended to shoot them."

"When the defendant was interviewed at the Pasadena Police Department shortly after his arrest, he stated that he was presently on parole to the California Youth Authority following a conviction in 1952 for a narcotics violation.

"He stated that as a result of this conviction he had served a year at the Preston School for Boys. He also stated that he is presently an advocate of modern jazz music and that he plays the piano and the trombone. He further advised that all the crimes that he committed following his release from prison were to obtain money in order to further his musical career.

"In addition to the above-mentioned three bank robberies, the defendant has confessed to the following crimes:

"1—A liquor store held up in Compton, California, on approximately March 15, 1955, at which time the defendant obtained a .32 caliber nickel plated Colt automatic as well as $40.00 in currency. Investigation at the Los Angeles County Sheriff's Office shows that the defendant struck the two victims over the head with beer bottles.

"2—Defendant advised that a few days after the liquor store robbery he held up a cleaning shop on Lakewood Boulevard in Downey, California. Investigation shows that the defendant used a small chrome plated hand gun, and obtained $65.00.

"3—The defendant stated that on approximately March 28, 1955, he stole a 1949 maroon Ford from the vicinity of Paramount and Olive Streets, in Norwalk, California. He stated that he found the brief case which was later used in two of the bank robberies in this car and that he abandoned the car shortly thereafter.

"4—The defendant also advised that on the same day he stole the above Ford, he assaulted a woman in a parking lot at Paramount and Imperial Streets, in Downey, California.

"5—The defendant also advised that sometime around the first of the year he stole a Hillman Minx automobile and that he later abandoned it in a parking lot

Thereafter, the defendant was committed to the custody of the Attorney General at McNeil Island. On February 25, 1956, defendant was committed to the U. S. Medical Center at Springfield, Missouri, as a "certified psychotic," where he has since been and still is. In January, 1959, defendant wrote a letter to the undersigned, which the Court considered as an effort to initiate proceedings under Section 2255 of Title 28 United States Code. The letter was called to the attention of the United States Attorney who corresponded with the authorities at Springfield, and thereafter Mr. Goodstein, counsel for defendant, was contacted, and he filed a formal motion under Section 2255 of Title 28 U.S.Code. The motion was set for hearing, and after several continuances it was heard on August 14, 1959, without the presence of the defendant. At that time, there was introduced letters from the authorities at Springfield, including a report of a staff examination dated March 31, 1959, which concluded as follows:

"Recommendations: The NP staff is of the opinion that: (1) Gerald L. Stone has been seriously mentally ill for a long period of time. His illness is presently in remission to the extent that he can be regarded as competent to understand his present situation as a convicted person and to pursue an action in court seeking relief (understand the proceedings and assist counsel). (2) In the light of previous and present findings and the knowledge of his present and past mental status, Gerald L. Stone has probably been mentally ill for several years. There is reason to believe that he was probably mentally ill at the time of the commission of his offense for which he is currently serving a sentence, and that the acts of that offense were the product of his delusions. (3) Because of his delusions, Gerald L. Stone was very likely incompetent to stand trial because he was not able to properly assist his counsel in his own defense or understand the true nature of the proceedings against him."

The questions then, are: (1) Whether or not such findings, vague and nebulous as they are, made four years after the defendant has pleaded, can impeach the judgment and finding of the Court made at the time of plea upon the uncontested evidence consisting of the report of a competent and qualified psychiatrist based upon an examination made at the time of plea, and the court's own observations, and (2) whether or not such findings compel another hearing on that

near the Elks Club in Compton, California. He stated that while in the Minx he attempted to grab a woman's purse near the intersection of Manchester and Sepulveda Boulevards, but that the woman screamed and fought the purse away from him. The defendant also advised that on the same night he stole the Hillman Minx he broke into the Elks Club in Compton and obtained about $60.

"6—The defendant further advised that on approximately March 22, 1955, he held up the Bekins Van and Storage Company at 247 South LaBrea, Inglewood, California, and obtained approximately $45. The files of the Inglewood Police Department reflect that a person answering the subject's description held up the Bekins Van and Storage Company at 5:45 P.M. on March 22, 1955. The files further reflect that during this robbery the victims were locked in a vault and that someone, presumably the subject, called the police department and advised them that the victims had been locked in the vault.

"When the Probate Officer asked the defendant for a statement as to why he committed these bank robberies he stated 'I plead guilty only to laws of U.S. I plead innocent to laws of divine right which I believe to be involved.'

"Prior Record: (FBI No. 346524–B)

"All of defendant's prior record has been as a juvenile. The defendant admits that he was arrested in 1951 for grand theft auto in Compton, California, and placed on probation for one year; arrested in 1952 for forging checks in Compton, California, and placed on probation for one year; arrested on April 16, 1953, for possession of narcotics and narcotics addiction in Los Angeles, California, and committed to the Preston School of Industry, Ione, California, for one year. He was released in February, 1954, and is now on parole to the California Youth Authority."

issue. It is to be noted that counsel for defendant did not either contest the report or ask that the psychiatrist be produced for cross-examination.

In this connection, attention is called to the fact that the Court had an opportunity to observe the defendant, and questioned him at length on his plea of guilty, as will be seen from the transcript. His answers were intelligent and quickly given. His attitude was arrogant and boastful.

■ Where the question of the then sanity of a defendant, or his mental capacity to understand the proceedings against him and assist in his defense is raised before plea, and compliance is had with 18 U.S.C. § 4244, and the defendant then pleads guilty and the plea is accepted by the Court, and sentence imposed, the acceptance of the plea by the Court is a finding on such issues, and such finding is not subject to collateral attack by habeas corpus or proceedings under Section 2255 of Title 28 U.S.Code. Dodd v. United States, 10 Cir., 1952, 196 F.2d 190, certiorari denied 72 S.Ct. 1084, 96 L. Ed. 1374; 10 Cir., 1954, 343 U.S. 987, 213 F.2d 854; 10 Cir., 1955, 222 F.2d 175; Handlon v. United States, 6 Cir., 1957, 246 F.2d 866.

In the Dodd case, much the same procedure occurred as here: the Court appointed counsel and referred the matter to a qualified psychiatrist. After reports on each of two defendants that each was so mentally competent as to be able to understand the proceedings against him and to assist in his own defense, the defendants each pleaded guilty, which pleas were accepted by the court. The court thereupon sentenced each of the defendants.

In that connection, the court said as follows: (196 F.2d 190, at page 191):

"[1] By the court's acceptance of the pleas of guilty in these circumstances, it resolved the issue of the appellants' mental capacity to know and understand the nature of the charge against them and to assist in their defense, and its judgments thereon are not subject to collateral attack. Hahn v. United States, 10 Cir., 178 F.2d 11; McMahan v. Hunter, 10 Cir., 150 F.2d 498; Srygley v. Sanford, 5 Cir., 148 F.2d 264; Hall v. Johnston, 9 Cir., 86 F. 2d 820; Whitney v. Zerbst, 10 Cir., 62 F.2d 970. Cf. Frame v. Hudspeth, 10 Cir., 109 F.2d 356; Hallowell v. Hunter, 10 Cir., 186 F.2d 873."

The defendant here also claims insanity at the time of the commission of the crime. But under the authority of the Dodd case, supra (222 F.2d 175, 176) that question cannot now be raised by collateral attack in view of defendant's plea of guilty.

■ Inasmuch as petitioner is not entitled to the relief asked on the matter of his mental competence as a matter of law, and inasmuch as no other questions are raised which are matters of fact, no hearing is required. Hill v. United States, 6 Cir., 1955, 223 F.2d 699, at page 700.

The Court holds that the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, and

It Is Therefore Hereby Ordered, Adjudged and Decreed that the motion of defendant to vacate his sentence be, and the same is denied.

### Exhibit "A"

"In The United States District Court Southern District of California Central Division

---

Honorable Peirson M. Hall, Judge Presiding

---

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Gerald Lionel Stone,<br>Defendant. | No. 24234-Criminal |

Reporter's Transcript of Proceedings
Los Angeles, California
Monday, May 2, 1955

Appearances:

| | |
|---|---|
| For the Plaintiff: | Laughlin E. Waters United States Attorney Los Angeles 12, California, by Bruce A. Bevan, Jr. Assistant U. S. Attorney |
| For the Defendant: | Maurice Mac Goodstein, Esq. |

Index

| | Page |
|---|---|
| Hearing of May 2, 1955 | 1 |
| Hearing of May 9, 1955 | 6 |
| Hearing of May 16, 1955 | 9 |
| Hearing of May 23, 1955 | 12 |
| Hearing of June 20, 1955 | 18 |

Los Angeles, California; Monday, May 2, 1955; 10:00 A. M.

(Other court matters.)

"The Clerk: Case No. 24234, United States v. Gerald Lionel Stone.

"Gerald Lionel Stone, is that your full true name?

"The Defendant: Yes.

"The Clerk: You are in the United States District Court charged in an indictment, a copy of which I hand you, with violating the laws of the United States.

"You are entitled to a trial by jury, to a compulsory attendance of witnesses, and to be represented by counsel.

"Do you have counsel?

"The Defendant: No, I don't.

"The Court: Mr. Stone, where is your home?

"The Defendant: It is in Compton, California.

"The Court: You were raised here?

"The Defendant: Yes, sir.

"The Court: Your family is around here, are they?

"The Defendant: Yes.

"The Court: Do they know you are in trouble now?

"The Defendant: Yes, sir.

"The Court: Will they come forward to help you out?

"The Defendant: I don't think it will be necessary. I don't think it will do any good.

"The Court: Well, don't you think they might hire a lawyer for you now that you are in trouble?

"The Defendant: I don't think a lawyer would do any good.

"The Court: You do not think a lawyer would do you any good?

"The Defendant: No.

"The Court: Well, I have been on this bench a long time, and that is just the time a defendant needs a lawyer, when he thinks a lawyer cannot do him any good.

"The reason I am directing my questions to you is to determine whether or not I should appoint somebody to represent you, or you can provide a lawyer of your own choosing.

"Do you have any money or funds of your own?

"The Defendant: No, I don't.

"The Court: How old are you?

"The Defendant: 19.

"The Court: Mr. Goodstein?

"Mr. Goodstein: All right, your Honor.

"The Court: Will you accept the appointment to represent Mr. Stone?

"Mr. Goodstein: I do.

"The Court: Mr. Stone, is it agreeable that Mr. Goodstein be appointed to represent you?

"The Defendant: Yes, sir.

"The Court: I will continue this matter until next Monday, May 9th, at 10:00 o'clock for plea and all further proceedings. He is charged with robbing a na-

tional bank with a dangerous weapon. I have been observing the defendant and I would like to suggest that you make special inquiry as to his competence, Mr. Goodstein.

"Mr. Goodstein: All right, your Honor."

(Transcript of Proceedings of Monday, May 9, 1955).

"The Clerk: Case No. 24234, United States v. Gerald Lionel Stone.

"Mr. Goodstein: In this matter, I interviewed the defendant and, in my opinion, I do not believe he is competent to plead and I would like to request that the court appoint a psychiatrist to determine his competency.

"The Court: You spent some time with the defendant?

"Mr. Goodstein: Yes, I did. I interviewed him last Monday in the jail quite thoroughly.

"The Court: Is there a serious question in your mind?

"Mr. Goodstein: There is, your Honor, so serious that I certainly do not want to take any responsibility on advising him as to his plea.

"The Court: Very well. The court will appoint Dr. McNeil as a psychiatrist to examine the defendant, and will continue the matter of plea—a week or two weeks? How long does it take?

"Mr. Bevan: Well, the order is already prepared, your Honor, and is submitted here with our approval.

"The Court: Very well. I will continue it one week from today, that will be May 16 at 10:00 o'clock, for plea and all further proceedings.

"The order is signed. The matter is continued for one week."

(Transcript of Proceedings of Monday, May 16, 1955).

"The Clerk: Case No. 24234, United States v. Gerald Lionel Stone.

"The Court: This matter was put over until today after reference to Dr. McNeil, a psychiatrist. I received from him in the mail this morning a letter stating that he had just received the ref-

erence, I think last Friday or Thursday, and he had not had an opportunity to examine the defendant, and wants to put it over. He did not say when he would have an opportunity to do so; he just said he could not get it done today.

"Mr. Bevan: Dr. McNeil called me last Friday and said he did examine the defendant and already has formed his conclusions, but that the report was impossible to be made. He stated that the report might be possibly here today or tomorrow.

"The Marshal: I had him there Friday afternoon at the doctor's office, and he examined him from 3:00 to 5:00, he interviewed him, but he thought he would be late with the typewritten report on it.

"The Court: I see. What is your suggestion?

"Mr. Goodstein: My suggestion is that we put it over until we both have the opportunity to read the report. I am a little fearful of your calendar days. Can we pick another day but Monday?

"The Court: No, I do not think we will have the irregularities in the calendar again that occurred this morning.

"May 23rd, that will give you an opportunity to examine the report, and you may also wish to go and talk to the doctor, each of you yourselves, after reading the report. I don't know. May 23rd at 10:00 A.M. for plea and all further proceedings."

(Transcript of Proceedings of Monday, May 23, 1955)

"The Clerk: Case No. 24234, United States v. Gerald Lionel Stone.

"The Court: This matter, Mr. Stone, was put over until today for plea after reference, at the request of your counsel, to a psychiatrist for psychiatric examination of yourself to determine your present competency.

"The psychiatrist has reported that you are sane and competent and capable of defending yourself.

"Have you seen the report, counsel?

"Mr. Goodstein: Yes, I have.

"The Court: Are you ready to proceed?

"Mr. Goodstein: We are ready to proceed.

"The Clerk: Do you waive reading of the indictment?

"Mr. Goodstein: Yes.

"The Clerk: What do you plead to Count One of the indictment?

"Mr. Goodstein: Not guilty.

"The Court: The defendant must answer. What is your plea to Count One, Mr. Stone?

"The Defendant: Guilty.

"The Court: Your lawyer has recommended a not guilty plea.

"Mr. Goodstein: On Count One. We recommended guilty on Counts Two and Three. The defendant is confused.

"The Court: All right. Gerald Lionel Stone, what is your plea to Count One?

"The Defendant: Guilty.

"The Clerk: He said guilty—
"Count Two?

"The Defendant: Guilty.

"The Clerk: And Count Three?

"The Defendant: Guilty.

"The Clerk: A plea of guilty to all three counts, your Honor.

"The Court: Mr. Stone, this matter came on before the court after Mr. Goodstein was appointed to represent you, and he suggested to the court the possibility that you were not mentally competent to defend yourself, and that the matter be referred to a psychiatrist to examine you. The psychiatrist has reported that in his opinion you are sane and competent to defend yourself.

"Do you understand the proceedings here this morning?

"The defendant: Yes, I do.

"The Court: Have you told your lawyer all the facts and circumstances surrounding the transactions set forth in this indictment?

"The Defendant: Yes.

"The Court: And your lawyer has told you, has he, the total maximum punishment which this court might impose on each of these three counts in the event your plea of guilty is accepted, or in the event you might be tried and found guilty by a jury?

"The Defendant: Yes, he has.

"The Court: What is it?

"The Defendant: $10,000 or 25 years, or both, on the first count. And $5,000 or 20 years, or both, on the second count; and $10,000 or 25 years, or both, on the third count.

"The Court: That's a total of 70 years. You understand that, do you?

"The Defendant: Yes.

"The Court: If they were run consecutively. And a total fine of $25,000. You understand that?

"The defendant: Yes.

"The Court: Now, has your lawyer told you of all your rights and privileges under the law?

"The Defendant: Yes, he has.

"The Court: Including your right to be tried before a jury and compel the Government to prove you guilty beyond a reasonable doubt as to each one of these offenses?

"The Defendant: Yes.

"The Court: And your right to have counsel at all stages of the proceedings?

"The Defendant: Yes.

"The Court: And to have the processes of this court for the compulsory attendance of witnesses in your behalf?

"The Defendant: Yes.

"The Court: Are you making your plea of guilty, Mr. Stone, to any one of these counts because of the use of force or the threat of use of force upon or against you by any person whomsoever—

"The Defendant: No.

"The Court: —or any member of your family by any person whomsoever?

"The Defendant: No.

"The Court: Mr. Stone, are you making your plea of guilty because you stand

in fear for yourself from any person whomsoever—

"The Defendant: No.

"The Court: —or for any member of your family?

"The Defendant: No.

"The Court: Has any person whomsoever given you any promises of any kind or nature which has induced you to enter pleas of guilty?

"The Defendant: No.

"The Court: Mr. Stone, is your plea of guilty to each one of these counts entirely free and voluntary?

"The Defendant: It is.

"The Court: You understand the nature of the proceedings?

"The Defendant: Yes.

"The Court: You understand the effect and possible consequences of your plea, do you?

"The Defendant: Yes.

"The Court: Very well. The plea of guilty will be accepted to each one of the three counts.

"The matter of sentence will be put over to June 20th at 2:00 P.M.

"The defendant will stand committed."

(Transcript of Proceedings of Monday, June 20, 1955).

"The Clerk: Case No. 24234, United States v. Gerald Lionel Stone.

"Mr. Goodstein: Ready your Honor.

"The Court: This matter has been put over until today for sentence after reference to the probation department. Have you read the probation report, counsel?

"Mr. Goodstein: I have, your Honor.

"The Court: Are you ready to proceed?

"Mr. Goodstein: We are, your Honor.

"The Court: Are you, Mr. Stone?

"The Defendant: Yes, sir.

"The Court: Do you have any comment to make, Mr. Goodstein?

"Mr. Goodstein: I have, your Honor.

"The record is quite black, but this is a young man of 21 years of age, and I do believe if your Honor would consider making some sort of comment when he is ordered into custody of the Attorney General to the effect that he can get some sort of psychiatric treatment or therapy I think that perhaps during his period of incarceration he might be able to rehabilitate himself somewhat.

"He appears alert and bright in certain things, and whereas in the legal definition of competency we have to say he is legally competent, he certainly isn't, in my opinion, insofar as the ordinary sense of the word is concerned.

"The Court: As I recall, it was at the court's own suggestion after observing the defendant here—

"Mr. Goodstein: That is correct.

"The Court:—that a psychiatrist was appointed, and his report was received, and indicated that the defendant was legally competent. He pleaded guilty, and in the usual questioning it appears that his plea of guilty was entirely free and voluntary.

"Do you have any comment to make, Mr. Bevan?

"Mr. Bevan: Yes, your Honor.

"I note that the probation report reflects that there were additional offenses, the commission of which the defendant admitted.

"I would just like to state for the purpose of clearing the record that on April 11, 1955 the defendant appeared in a lineup or a show-up at the Los Angeles County Jail and he was viewed by all the available witnesses, not only to the six additional crimes to which he has admitted, but also to the three bank robberies, and the witnesses have all identified the defendant positively as being the perpetrator of the crimes to which he has confessed.

"The Court: Very well.

"I have the probation report here, and it is only by the grace of God that this defendant is not being charged with murder. It appears that he committed this robbery and had on his person a gun that he attempted to shoot and kill two

different people. He so stated at the time of his confession, he didn't say he intended to kill them, he intended to shoot them.

"In addition to that, while I cannot punish this defendant for these other times, but under Count One it charges a violation of Title 18, Section 2113(d) which provides for a punishment of 25 years, and Count Two, under Section 2113(a) for 20 years, and Count Three under Section 2113(d) for 25 years. So in fixing the length of the sentence I must take into consideration the character and conduct of this young man in the past.

"According to his own statement he held up a liquor store on Compton Boulevard in Compton, California, on approximately March 15, 1955, at which time he obtained a .32 caliber nickle-plated Colt automatic, as well as $40 in currency.

"The investigation shows that the defendant struck the two victims over the head with beer bottles.

"A few days after that liquor store robbery he held up a cleaning shop on Lakewood Boulevard, in Downey, and used a small nickle-plated hand gun.

"He admits that at approximately March 28th he stole a 1949 Maroon Ford from the vicinity of Paramount and Olive Streets in Norwalk. He found a brief case in it and he used that later in two of the bank robberies and abandoned the car.

"He states that on the same day he stole the Ford he assaulted a woman in a parking lot at Paramount and Imperial Streets in Downey.

"He states that some time around the first of the year he stole a Hillman Minx automobile and he later abandoned it in a parking lot near the Elks' Club in Compton, and that while in it he attempted to grab a woman's purse near the intersection of Manchester and Sepulveda, but the woman screamed and fought the purse away from him.

"He states that the same night he broke into the Elks' Club in Compton and obtained about $60. That is the one to which you do not have any verification.

"Mr. Bevan: That is correct, your Honor, although I do believe it is verified that the Elks' Club was burglarized.

"The Court: You do have verification of all of these others?

"Mr. Bevan: Yes, your Honor.

"The Court: Do you have a verification of the hold up of Bekins Van and Storage, No. 6?

"Mr. Bevan: Well, the FBI report states that all with the exception of the Bekins burglary, why the defendant was identified by the witnesses of these other crimes, and he has confessed those same crimes which he admitted in the probation report.

"The Court: And he states that on or approximately March 22nd he held up Bekins Van and Storage in Inglewood, the files of the Inglewood Police Department reflect a person answering subject's description held up Bekins at 4:45, the victims were locked in a vault and someone, presumably the subject, called the police department and advised them.

"In view of the crimes charged and the defendant's plea of guilty, I have no alternative but to impose a sentence which I am about to do.

"Do you have anything to say, Mr. Stone?

"The Defendant: I don't think that any sentence that might be imposed would be just.

"The Court: Why?

"The Defendant: Because there is a deep shade of danger in the matter.

"The Court: In what respect?

"The Defendant: The motive.

"The Court: Your motive was to secure money.

"The Defendant: Primarily no.

"The Court: No?

"The Defendant: No.

"The Court: What was it? It was an ambition which you expected to attain by money.

"The Defendant: After trying other ways, yes.

"The Court: Any legal reason why sentence should not be pronounced?

"Mr. Goodstein: No, your Honor.

"The Court: It is the judgment and sentence of the court that the defendant be committed to the custody of the Attorney General for a period of 25 years on Count One;

"It is the judgment and sentence of the court that the defendant be committed to the custody of the Attorney General for a period of 20 years on Count Two, to be consecutive to and not concurrent with the sentence on Count One;

"It is the judgment and sentence of the court that the defendant be committed to the custody of the Attorney General for a period of 25 years on Count Three, to be consecutive to and not concurrent with either of the sentences on Count One or Count Two.

"The defendant will stand committed."