## RUEBUSH v. UNITED STATES.
### No. 4608.

United States Court of Appeals
Tenth Circuit.

Aug. 5, 1953.

Rehearing Denied Sept. 3, 1953.

James H. Keet, Springfield, Mo., for appellant.

John F. Raper, Jr., U. S. Atty. for Dist. of Wyoming, Cheyenne, Wyo. (C. N. Bloomfield, Jr., Asst. U. S. Atty. for Dist. of Wyoming, Cheyenne, Wyo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

This is an appeal from an order denying a motion to vacate a sentence, filed under 28 U.S.C.A. § 2255.

Ruebush was charged by information with a violation of 18 U.S.C.A. § 1708. He entered a plea of guilty to the information and was sentenced to the custody of the Attorney General for confinement for a period of four years.

A complaint was filed charging Ruebush with stealing, taking and abstracting a certain letter from a United States Post Office letter box on September 17, 1951. A warrant was issued and he was taken before a

United States Commissioner. He was informed of his right to counsel, but waived a preliminary hearing and was committed to the Laramie County Jail on September 26, 1951. While in jail he consulted with a lawyer, but did not retain him because of lack of funds. On October 24, 1951, he was taken before the sentencing court on the matter of the waiver of indictment and consent to be charged by information. The court advised Ruebush that he was charged with taking and abstracting a letter addressed to Wayne Sullivan from the custody of the United States Post Office Department before it was delivered to the addressee thereof; that the charge was a felony; that he was entitled to have the matter presented to a grand jury; that if an indictment should be returned against him he could plead guilty or not guilty to the charge; that should he enter a plea of not guilty, he would be entitled to have the charge tried by a jury; and that he could consent to be charged by information and have the same rights to a trial by jury as under an indictment. He was expressly asked if he understood what had been stated to him and he answered in the affirmative. He was then asked if he desired to waive indictment and he answered in the affirmative. Thereupon, an information was filed against Ruebush, charging that on September 17, 1951, he did take and abstract a letter addressed to Wayne Sullivan from the custody of the United States Post Office Department before it was delivered to the person to whom it was directed and did embezzle the contents thereof. The information was read to Ruebush. Thereupon, the court advised him that he was entitled, under the United States Constitution, to have the assistance of counsel in determining what plea he should enter to the information and that if he did not have money to employ an attorney, the court would appoint an attorney to represent him. Ruebush was then asked if he understood what the court had stated to him and he answered in the affirmative. He was asked if he wanted a lawyer and replied in the negative. The court then asked him if he was ready to plead and he replied in the affirmative and pleaded guilty. After the plea of guilty a pre-sentence investigation was made. A pre-sentence report was made to the court. Thereafter, on November 27, 1951, the sentence was imposed.

On August 25, 1952, Ruebush filed a motion to vacate the sentence on the following grounds: That Ruebush was legally and medically insane at the time of the waiver of indictment and the arraignment and at the time of the imposition of sentence; that he was not capable of realizing "the significance of" his plea of guilty; that he was not competent to decide whether he needed the assistance of counsel at the time he stated to the court that he did not desire counsel; that the court did not sufficiently explain to Ruebush his constitutional rights or the nature of the offense with which he was charged; that at the time of the commission of the offense Ruebush was "a psychotic" and could not distinguish between right and wrong; and that after the pre-sentence report had been made and before the imposition of sentence the court failed to appoint counsel for Ruebush and failed to cause a qualified psychiatrist to examine Ruebush with respect to his mental condition and to report the result of his examination to the court.

The pre-sentence report reflected the following facts: Ruebush served in the United States Army from December 22, 1943, to May 8, 1945, and received an honorable discharge. The discharge followed a certificate of disability by a Medical Board at McCloskey General Hospital on May 1, 1945. The Board described his condition as "psychosis, schizophrenia, simple type, manifested by restlessness, tenseness, mild depression, auditory and visual hallucinations, ideas of reference, poor insight in judgment," and recommended his discharge "into his own custody." Ruebush was admitted to the Veterans Hospital at Waco, Texas on October 29, 1948, and released on December 22, 1948. The hospital records state that no dementia praecox was found; that there were indications of neuro-psychiatric difficulties; and that he was a sexual deviate.

At the hearing on the motion to vacate, the hospital records were introduced. Such records reflected that Ruebush was a homosexual, but that he was not psychotic.

At the hearing on the motion Dr. Don W. Herrold, a psychiatrist, was called as a witness for Ruebush.[1] He testified that he had examined the medical records with respect to Ruebush during the time he was in service, the Veterans Administration records subsequent to such service, and the medical records of the Medical Center for Federal Prisoners at Springfield, Missouri, where Ruebush was confined under the sentence, all of which had been introduced in evidence; that such records indicated that Ruebush had not been considered a psychotic since 1945. He further testified that he had examined Ruebush and that in October and November, 1951, in his opinion, Ruebush was competent to understand his rights as they were explained to him by the court at and immediately prior to his arraignment and to competently and intelligently waive his right to counsel and enter a plea of guilty. The substance of Dr. Herrold's testimony was that while Ruebush was a sexual deviate, he was not mentally incompetent.

The admission records of the Medical Center reflect that on January 3, 1952, on the Wechsler-Bellevue 4-Test Scale Ruebush attained a rating of average intelligence with an I. Q. of 103.

█ The trial court found, in effect, that Ruebush was mentally competent and that he understandingly and intelligently waived his right to counsel. We are of the opinion that the conclusion reached by the trial court is fully supported by the evidence.

█ We are further of the opinion that the court adequately explained to Ruebush his constitutional rights and the nature of the offense with which he was charged.

See Cherrie v. United States, 10 Cir., 179 F.2d 94, 96.

█ We agree that after the pre-sentence report was made an inquiry into the mental condition of Ruebush should have been made, pursuant to 18 U.S.C.A. § 4244, before imposition of sentence. However, we are convinced that such inquiry would have resulted in the same findings that were made in the instant proceeding and that no prejudice resulted.

Affirmed.

MURRAH, Circuit Judge, (dissenting).

Having in mind the duties imposed upon the trial judge in cases of this kind, I have a conviction that the trial court fell far short of his duty. In coming to this conclusion, I do not find it necessary to decide the question whether the petitioner was technically sane at the time he entered his plea of guilty. In my judgment, the question whether he understood the charge against him and all of his constitutional rights with respect thereto, is not resolved by merely determining whether he was sane or insane. It is determinable upon the broader issue of whether the trial court fulfilled his duty to make sure that he understood the nature of the charge and all of his constitutional rights, and waived them with that full understanding.

The trial court had actual knowledge from the probation report before it that the applicant was emotionally unstable and had been suffering from a mental infirmity. This alone was sufficient to give warning to the court of an unusual situation requiring special attention. In these circumstances, the duty of the court to vouchsafe the constitutional rights of the accused is not discharged by "yes" and "no" answers to formal questions. See Snell v. United States, 10 Cir., 174 F.2d 580.

I would vacate the judgment and remand the petitioner for further plea.

---

1. At Ruebush's request, the court had selected Dr. Herrold to examine Ruebush and the available records bearing on his sanity and make a report to the court.