**UNITED STATES of America, Plaintiff,**

**v.**

**Elmer M. HARRIS, Defendant.**

**No. 11032–M–Cr.**

United States District Court
S. D. Florida.

Dec. 14, 1962.

Edith House, U. S. Atty., Miami, Fla., for the Government.

James J. Laughlin, Washington, D. C., for defendant.

DYER, Chief Judge.

This cause is before the Court on the motion of the defendant, Elmer M. Harris, made pursuant to Title 28 U.S.C.A. § 2255, to set aside the judgment of con-

---

viction against him entered herein on February 9, 1960.

The defendant was charged in a thirteen count indictment with violations of Title 18 U.S.C., Sections 2 and 2314. After a two day trial the jury, on February 9, 1960, returned a verdict of guilty as to each count, and defendant was sentenced on February 19, 1960, to imprisonment for three years as to Counts 1, 2 and 3 to run concurrently. Imposition of sentence on the remaining counts was suspended, and the defendant placed on probation for a period of five years.

An appeal was perfected, and on March 21, 1961, the judgment of this Court was affirmed.

After a hearing on April 27, 1961, before the United States District Court, Northern District of Illinois, the Honorable William J. Campbell remanded defendant to the United States Medical Center at Springfield, Missouri, under the provisions of Title 18 U.S.C.A., Section 4246, as being then mentally incompetent to stand trial on a second offense of possession of goods stolen from an interstate shipment.

On February 15, 1962, defendant was examined by the neuropsychiatric staff at Springfield and was found to be able at that time to assist his counsel in his own defense and to rationally understand the charges pending against him. He was again taken before the United States District Court, Northern District of Illinois, on March 5, 1962, was adjudged competent to stand trial in that Court, and received a sentence of one year and one day to run concurrently with the three-year sentence previously imposed in this Court.

At the hearing on this motion, defendant had been transported from Springfield, Missouri, to Miami, and was present during all of the proceedings. (Nichols v. United States, 5 Cir., 310 F. 2d 374, 1962) The Court heard the testimony of his wife, the attorney who represented him at his trial, and a medical expert produced in defendant's behalf. In addition, the Court has considered, in support of defendant's motion, all of the classification material of the Medical Center at Springfield concerning defendant, the report of defendant's psychiatric examination by Dr. Carl Miller of April 18, 1961, the proceedings before the Honorable William J. Campbell in Chicago, Illinois, on April 26 and 27, 1961, Dr. Paul Ravenna's reports of November 18 and 21, 1959, the transcript of testimony of the defendant at his trial (as well as all other writings, together with the documents received in evidence, because defendant's counsel objected to a consideration of defendant's testimony alone), and the motion for continuance and affidavits appended thereto filed in November of 1959 in this Court. Likewise, the Court has reviewed all of the papers in the original file in this cause.

The Defendant had been a successful business man in Chicago, and in 1952–53 liquidated his holdings, retired and moved to Palm Beach, Florida. He was engaged in the real estate business in his own behalf until 1957, when he moved to Miami. The government filed an income tax lien against the Defendant for two and one-half million dollars in late 1955 or 1956, and after this there seemed to be a change in his behavior. In 1957 he purchased a controlling interest in a relatively large manufacturing company and was president of this concern for about one year. It ended up in bankruptcy.

About this time he would leave home for varying periods of time without saying where he was going or where he had been. On occasions he would take the children on a shopping spree and then would not see them for an unusual time. He seemed to be either very happy or depressed and wanted many or no people around. He threatened suicide and apparently desired to run away and leave his responsibilities. Although it was suggested that he consult a physician, he refused and his wife did not insist that he do so. He actually was not in contact very much with his family and his wife ultimately sued him for legal sepa-

ration. During his trial, however, she testified in his behalf.

Defendant served in the Army during World War II for about four years and was honorably discharged. He was a moderate drinker.

Prior to defendant's trial his attorney found it difficult to get him to sit down and discuss anything. He was seemingly occupied with his many other interests. His lawyer felt that defendant lacked appreciation of the gravity of the charges against him and was uncooperative. This continued to the time of trial, and then he insisted, against his counsel's advice, on taking the stand in his own behalf. When it was suggested to him that he have a psychiatric examination, he scoffed at this and stated that his attorneys, rather than he, should do so.

Defendant was characterized by his attorney as a scatterbrain, but not incompetent. No motion was made prior to trial that defendant be examined for mental capacity.

Defendant's expert medical witness based his opinion solely upon the reports from the United States Medical Center and Dr. Miller. He simply took the diagnosis from the reports that in April, 1961, defendant had a manic-depressive reaction, manic type with psychosis. This meant to him a swing from deep depression and apathy to a furor of activity and grandiose manner. He concluded that defendant had been suffering from a psychosis since 1955 and at the time of trial in February, 1960, was not able to fully understand the charges against him, nor adequately to assist in his own defense— that he was mentally incompetent.

Admittedly it is a difficult task to determine in December, 1962, whether or not the judgment of conviction entered in February, 1960, should be set aside because of defendant's lack of capacity at that time to fully understand the charges and adequately assist in his own defense. For this reason the greatest latitude was given defendant in the hearing on his motion.

While defendant's marital behavior subsequent to 1957 could hardly be characterized as that of a model husband, it is not such a departure from that of many "average" persons to indicate a psychotic personality. The records of the divorce courts are replete with cases of husbands absenting themselves from time to time without an adequate or indeed any explanation.

Over-generous response to children's desires and requests is not limited to indulgent parents, nor does it signify, if measured by the experience of many, such abnormal reaction as would lead one to believe that competency was questionable.

While there must be a positive and negative limit to calculate a swing from happiness to depression in a normal or psychotic individual, simply to say that some days one feels like a champion and on others a fool does no more than describe all of us. There is nothing abnormal in enjoying being with a crowd occasionally and at other times wanting to be alone.

Indifference by a non-hypochondriac, a busy person, or resistance to submission to a medical examination is more normal than abnormal. Physicians deplore their inability to persuade the "average" person to have even an irregular check up.

Defendant's army life was no different than that led by his contemporaries and there was nothing significant about his record.

Defendant's attitude toward, and lack of cooperation with his attorney, was no doubt a frustrating experience for the latter, and defendant's refusal to take his case seriously and insistance on trying it in his own way certainly must have added to his attorney's burden. This, however, is, unfortunately, no unusual experience for trial counsel. Defendant's attorney previously had been an Assistant United States Attorney and was thoroughly familiar with the provisions of Title 18 U.S.C.A. Sec. 4246. His criminal practice before this Court was not inconsiderable. He neither thought the de-

fendant was incompetent, nor was there a bizarre behavior pattern to suggest the necessity for a mental examination.

Defendant testified in his own behalf at his trial. A reading of the forty one pages of his testimony is convincing that he was well oriented, coherent, lucid, responsive and expressed himself chronologically and without difficulty. From ought that appears from his performance on the witness stand, he well understood the charges against him and made a clear attempt to counter them.

So much for the lay testimony which must be evaluated by lay practical common sense and experience.

Defendant's expert has degrees as a psychologist and medical doctor. He is recognized in his speciality in this area. His flat opinion was that defendant had been incompetent since 1955 and continued to be such up to the time of his trial in February, 1960. His testimony was based solely upon the reports of examination of Drs. Miller and Wright and the neuropsychiatric examinations of the staff at the Springfield, Missouri, Medical Center. This doctor had never examined defendant. He had not read the transcript of the testimony of defendant's trial, nor examined any of the exhibits. He was almost completely unaware of defendant's business ventures, social activities or day to day activities. He did not know of defendant's sudden hospitalization in Chicago, Illinois, in November, 1959, on the eve of trial set in Miami, for supposed myocardial infarction, and an examination by a court-appointed physician three days later, who found no evidence of this or any other disabling illness or disease that would require the delay of his trial.

In fact, the doctor gave the impression that it was hardly necessary to predicate his opinion on the reports which he stated he reviewed, because he had read *newspaper* reports at the time of and concerning defendant's trial and had remarked then that defendant was undoubtedly a manic type depressive with psychosis.

Such testimony is hardly persuasive (Wooley v. Great A. & P. Tea Co., 3 Cir., 1960, 281 F.2d 78) and even less so when considered in the light of the Neuropsychiatric Staff Examination at the Medical Center of February 15, 1962, upon which the doctor relied for his own opinion, which states in pertinent part:

"He (referring to defendant) at the present time sees the fact that being made competent to stand trial on the charges of receiving the interstate shipments (then pending in Chicago) will help him in another case which he has pending. He has been given a three year sentence for an income tax evasion charge and feels that competency at this time under testimony by the psychiatrists at the Medical Center will tend to prove that he was incompetent in 1959 when he was sentenced on the income tax charge. *However, we at the Medical Center have no clinical grounds to state whether or not Harris was competent at the time of his first trial in 1959.*" (Emphasis supplied)

Defendant was found incompetent in April of 1961, but found competent in February of 1962, and so far as appears in this record has had no remissions since that date.

■■ The burden at this time is on defendant to show that at and before the time of his trial in February, 1960, he was unable to understand the charges against him and to assist his counsel in his own defense. (Estep v. United States, 5 Cir., 1958, 251 F.2d 579; United States v. Edwards, D.C.D.C., 152 F. Supp. 179, affirmed 103 U.S.App.D.C. 152, 256 F.2d 707, cert. den., 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82; Praylow v. United States, 5 Cir., 1962, 309 F.2d 750.) Considering the testimony and exhibits before me, I find that this burden has not been met. Accordingly, I find that defendant was able to and did understand the charges against him and was competent to assist counsel in his own defense, before, during, and follow-

ing his trial in February, 1960; and so defendant's motion to set aside the judgment of conviction herein must be denied.

This opinion will serve as the Court's Findings of Fact and Conclusions of Law as required by Title 28 U.S.C.A. 2255.