Coleman Harper BELL, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. WC6532.

United States District Court
N. D. Mississippi, W. D.

Aug. 3, 1966.

312

Coleman Harper Bell, pro se.

H. M. Ray, U. S. Atty., and E. Grady Jolly, Jr., Asst. U. S. Atty., Oxford, Miss., for the United States.

## MEMORANDUM OPINION

CLAYTON, Chief Judge.

Petitioner, Coleman Harper Bell, has moved pursuant to 28 U.S.C. § 2255 to vacate judgments of conviction entered in this court. After the motion was filed, an order was entered requiring petitioner to file within a prescribed period thereafter all other grounds which he might have or claim to have, cognizable under section 2255, attacking his convictions, or else have such grounds forever barred. Petitioner filed certain additional materials, whereupon the court ordered the respondent to show cause why the motion should not be granted. The United States' answer to that order put in issue the factual allegations of the motion to vacate and a full hearing was held, at which petitioner was present. At the conclusion of the hearing, petitioner was granted leave to supplement the evidentiary record with certain documents which he later obtained with the assistance and cooperation of the United States Attorney. When the record was thus completed, petitioner submitted a memorandum of law, to which the United States replied, and this cause is now before the court on the petitioner's motion to vacate, as supplemented, the evidence received at the hearing and later, the opposing memorandum briefs, and the files and records of the court.

The challenged convictions rest upon the petitioner's pleas of guilty to each count of an eight count information (filed after waiver of indictment) charging violations of the Dyer Act, 18 U.S.C. § 2312. The arraignment, at which formal waivers of counsel and of indictment were executed and the pleas were entered, was held on 2 June, 1965. Petitioner was committed by the court to the custody of the Attorney General for study and observation, pursuant to 18 U.S.C. § 4208(b) and on 3 September, 1965, after receipt of the report of study, separate sentences of imprisonment were imposed as to each count, i. e., five years on count one; three years on count two, to run consecutively to the sentence im-

posed on count one; and five years on each remaining count, all to run concurrently with the sentence imposed on count one.

Immediately after imposition of sentence, petitioner filed a notice of appeal. Although he neither paid filing or docketing fees, nor requested leave to appeal in forma pauperis pursuant to 28 U.S.C. § 1915, the filing of the notice was effective to vest jurisdiction in the court of appeals. Rule 37(a) (1), F.R.Crim.P. Petitioner apparently took no further steps to prosecute the appeal; no record on appeal was ever filed and the appeal was never docketed in the court of appeals. While it is thus obvious at this date that petitioner has abandoned the appeal, no formal action had been taken in this regard prior to the filing of the motion to vacate and at the present time the appeal remains pending. Of course, as the record shows, no claim of error was ever presented to this court upon a denial of which an appeal might be predicated. These circumstances are stronger than those in Black v. United States, 269 F.2d 38 (9th Cir. 1959), in which the court of appeals treated the filing of the motion to vacate as an abandonment of the appeal and sustained jurisdiction of the section 2255 proceeding.

■■■■ The pendency of the appeal from the original conviction was brought to the court's attention by a letter from an Assistant United States Attorney to the court and to the petitioner. That letter advised that the government did not wish to interpose a jurisdictional objection at this point and that, to clarify the jurisdictional issue, the government was concurrently filing a motion to dismiss that appeal. A motion to vacate will not be entertained during the pendency of an appeal from the judgment under attack, since disposition of the appeal may make the motion unnecessary. 4 Barron Federal Practice and Procedure (Wright Ed. 1964 Supp.) § 2306, p. 353; Bilderback v. United States, 159 F.Supp. 713 (M.D.Ga.1958). While the authority of Black v. United States, supra, might well serve to sustain a final

order in this cause against a jurisdictional attack, the more cautious—and more pragmatic—course would seem to be to postpone entry of such an order until after the court of appeals acts upon the government's motion to dismiss the original appeal. That course will be followed here.

■■■■ Petitioner alleged that he was denied the right to counsel, that his waiver of counsel and pleas of guilty were coerced by government officials, that he was mentally incompetent at the time of the waiver of counsel and pleas of guilty and that he was denied due process because of the government's failure to move, and the court's failure to order, a pre-trial inquiry into petitioner's mental competency pursuant to 18 U.S.C. § 4244. The supporting allegations described a purported suicide attempt at the time of arrest and a prior history of mental illness and treatment therefor. It was alleged that various federal officers in whose custody he was held refused to allow petitioner to call an attorney or a member of his family; that he was held in solitary confinement for two months between arrest and arraignment; that necessary medicines for a stomach disorder were denied to him, which deprivation, coupled with incompatibility between the jail menu and a medically prescribed diet, resulted in a loss of thirty pounds in two months; and that he was not allowed to shave for some thirty-seven days because he was thought to be mentally incompetent and thus that he might harm himself if allowed to have shaving gear.

Accusations were made against a probation officer of this court, against special agents of the FBI and against the United States Attorney that each of them made threats and promises (which were allegedly broken) to induce his pleas of guilty and waiver of counsel. The probation officer was charged with promising to communicate with a certain attorney on petitioner's behalf, with promising to secure hospitalization for petitioner if he pled guilty, with threatening that petitioner would be held in

the county jail for an additional year before trial unless he pled guilty, and with making similar threats and promises to petitioner's mother. He was also accused of promising that if petitioner would name others involved in an auto theft ring, petitioner and his family would be protected. The FBI agents allegedly threatened that petitioner would be charged with a capital crime in another state unless he gave them an incriminating statement and promised that if he would name others involved in his crimes, he and his family would be protected and the agents would "make it very light on movant in Court." Because of the threats, petitioner alleged, he made an incriminating statement. The United States Attorney allegedly told petitioner that he did not need counsel; that if he did not plead guilty he would be held over at least two more terms of court before trial; and that if he insisted on trial, the statement given to the FBI agents would insure maximum sentences. Because of these threats and promises and the conditions under which he had been confined, the motion concludes, petitioner waived counsel and entered pleas of guilty.

■ The burden of proof in a proceeding under section 2255 is upon the petitioner. Estep v. United States, 251 F.2d 579 (5th Cir. 1958); Smith v. United States, 252 F.2d 369 (5th Cir. 1958); Twining v. United States, 321 F.2d 432 (5th Cir. 1963); Nash v. United States, 342 F.2d 366 (5th Cir. 1965). Petitioner was given a full opportunity to present all of his proof, with only rare imposition of the limitations ordinarily prescribed by the rules of evidence. Fifteen witnesses were called by the petitioner and one documentary exhibit was introduced by him in his endeavor to meet his burden of proof. As noted above, he was also allowed to file three documents as exhibits after the hearing. Finally, he attached copies of two letters to his brief on the merits which have been considered by the court although they are not properly in evidence.

Petitioner's witnesses, relatives, friends and state and federal officers who had contact with him during the relevant period, did not support the material allegations of the motion to vacate. As the hearing progressed and the testimony of witness after witness refuted those allegations, it became increasingly evident that only one witness was in a position to give testimony supporting the motion to vacate—petitioner himself. At several points in the hearing, the court explained petitioner's right to testify on his own behalf. Notwithstanding the clear invitation from the court and the obvious necessity from his point of view, petitioner declined to take the stand either on his case or in rebuttal. The only information which the court could acquire about petitioner from petitioner himself was that obtained by observing his demeanor and actions as he prosecuted his case. Such observations would be of value only if they suggested that, at least at the time of the hearing, petitioner suffered from some mental disorder so that, in an abundance of caution, further inquiry by experts might be ordered. However, at the time of the hearing, petitioner was obviously well oriented, alert, and perhaps more than normally intelligent.

Petitioner was arrested on 1 April, 1965, by local police in Jackson, Mississippi, on auto theft charges. He consumed an overdose of barbiturates which was sufficient to induce unconsciousness and the arresting officers had him placed in a hospital. On 3 April he regained consciousness and on 4 April he was sufficiently recovered to be taken from the hospital in a wheel chair and to be driven to the home of a United States Commissioner. The commissioner conducted proceedings in the automobile, at which the petitioner was informed of his right to counsel and to a preliminary hearing and of his right to call an attorney or other person. Petitioner stated that he intended to retain local counsel when he was transferred to this district and that he therefore did not need to retain counsel or have counsel appointed at that time. Further hearing was waived, bail

was set and petitioner was transferred to a county jail in this district, where he remained until his arraignment on 2 June.

The conditions of confinement in the county jail were not improper. Petitioner requested a cell by himself and was placed in a juvenile cell. He was never in "solitary confinement." There is no evidence that any medicine necessary to his well being was ever denied to him. During his hospitalization following arrest a tracheotomy had been performed and when the surgical wound showed signs of infection in the county jail, a local physician was called in by the jailer and the condition was successfully treated. Petitioner suffered from a stomach disorder prior to arrest which had been diagnosed as gastric hypersecretion with antral gastritis and for which certain medicines had been prescribed. Other evidence suggests that the stomach disorder was a product of his excessive anxiety and nervousness. There is no evidence that petitioner suffered any discomfort as to this disorder as a result of improper conditions of confinement. Contrary to his allegation of a weight loss of thirty pounds during this period, the petitioner's evidence shows at most a loss of approximately fifteen pounds between arrest and admission to U. S. P. Leavenworth two months later.

There is no evidence that any person was ever denied permission to visit petitioner during regular visiting hours, and petitioner's friends and relatives did visit him. Visiting hours were not unreasonably scheduled.

There is no evidence that petitioner was ever denied permission to make a telephone call. Rather, the evidence establishes that he was several times allowed to make such calls and that deputy marshals made calls on his behalf three or four times. No deputy marshal ordered that petitioner be denied use of the telephone. There was no interference with his mail.

Petitioner's bail was originally set at $4,000. After his transfer to this district additional charges were filed and a second commissioner set bail as to those charges at $10,000, for a total of $14,000. No one told petitioner or any member of his family that bail would continue to be increased so long as he or his family attempted to obtain his release.

Petitioner was not denied the right to counsel. The first commissioner fully explained his rights in this regard and, as noted earlier, petitioner waived assistance of counsel at that proceeding. There is no evidence that petitioner was financially unable to retain counsel, although he was advised of his rights in this regard, and his statements to various persons with respect to employment of counsel and other circumstances would reasonably lead the officers who dealt with him to believe that petitioner was neither entitled to or in need of appointed counsel. No officer (and particularly the probation officer accused) promised to communicate with counsel for petitioner. No officer (and particularly the United States Attorney accused) told petitioner that he did not need counsel. Both before and during arraignment, the United States Attorney fully advised petitioner as to his right to counsel, retained or appointed, and petitioner knowingly, understandingly, freely and voluntarily waived assistance of counsel. He never revoked that waiver prior to his ultimate sentencing and commitment. All of his insinuations and allegations to the contrary are false.

█ The special agents of the Federal Bureau of Investigation made no threats or promises to obtain a statement from petitioner. They adequately informed petitioner of his rights to remain silent and to consult an attorney and that any statement by him might be used as evidence. Having pled guilty, petitioner cannot now complain that the statement was inadmissible. However, in view of the allegations that an improperly obtained statement was used in a threatening manner by the prosecutor, the circumstances of the taking of the statement have been considered to determine their bearing on the voluntary character of the pleas of guilty. The

evidence establishes that the statement was given freely and voluntarily, with understanding of the right to remain silent and to consult an attorney and with knowledge of the consequences.

The probation officer made three visits to the petitioner, on each of which he was accompanied by another probation service employee. On the first visit, petitioner stated only that his wife was arranging for an attorney. The second visit was prompted by a letter from petitioner, and during that visit he said that he wished to plead guilty. He was given a form, which he executed, consenting to the institution of a pre-sentence investigation prior to conviction. At no time during any of the visits did the probation officer attempt to persuade petitioner to plead guilty. He did not state that petitioner could receive medical treatment only by pleading guilty or that he would be held in the county jail an additional year unless he pled guilty. No threats or promises of any kind were made by the probation officer.

Between the second and third visits, the probation officer interviewed petitioner's mother in the normal course of his pre-sentence investigation. She testified that he said petitioner needed hospitalization and that the only way he could obtain it was to plead guilty. At this juncture the only evidential conflict worthy of comment appears, for the probation officer categorically denied that he made such a statement to her. The court accepts his testimony on this point, but even if her testimony were true, the only relevance would be with respect to its bearing on the probation officer's credibility, because she also testified that she never communicated this conversation to petitioner until after he returned from U. S. P. Leavenworth, long after his pleas had been entered.

The United States Attorney fully advised petitioner as to his rights to counsel, to trial upon indictment rather than information and to a jury trial. Petitioner knowingly, understandingly, freely and voluntarily waived these rights. The United States Attorney made no threats or promises of any kind to petitioner.

It follows that there is no factual basis of any kind for the allegations that petitioner's pleas of guilty were coerced either by the cumulative effect of the conditions under which he was confined or by threats or promises by any officer. The conditions of confinement were no more onerous than is permitted by law, petitioner was well treated by all officers who had contact with him, and no officer was guilty of any act or omission which went beyond the bounds of constitutional propriety or which improperly influenced petitioner in any of the decisions he was called on to make.

■ The remaining issue, and perhaps the one most heavily relied on, concerns petitioner's mental competency at the time of arraignment. Petitioner does not allege that he was lacking in criminal responsibility at the time of his offenses, nor could the court consider such a claim in this proceeding unless the pleas of guilty were first found invalid, and petitioner does not expressly allege his incompetence at the time of sentencing three months after conviction. As to the latter time, however, the record has been examined to determine the presence of any evidence which might tend to support a claim by petitioner that he was incompetent then also.

The sole question then is mental competency at the time of arraignment and sentence. In this context "mental competency" has been variously defined but the definitions all reach the same end. When the accused was represented by counsel, the Supreme Court said that "the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Other statements of the test have been in terms of whether the accused was mentally capable of understanding the nature of the charges and of the proceed-

ings against him and capable of consulting with counsel intelligently in his defense. Estep v. United States, supra; United States v. Harris, 211 F.Supp. 771 (S.D.Fla.1962) affd. 316 F.2d 229 (5th Cir. 1963). In Johnson v. United States, 344 F.2d 401, 408 (5th Cir. 1965), four different degrees of mental capacity were said to require inquiry when, as here, the accused attacks convictions entered on pleas of guilty after waiver of counsel on the ground that he was mentally incompetent at the time of arraignment: mental capacity to understand the proceedings, to assist in defense, to waive counsel and to plead guilty. Conceivably the accused could be competent to do some of these actions and not others. It is worthy of reiteration that the burden of proving the requisite degree of mental disorder rested upon the petitioner.

■ The evidence offered by petitioner as to his alleged mental incompetence was limited to lay testimony of his family and friends and the state and federal officers and a medical report from a Veterans Administration hospital in which he had received treatment. Lay witnesses are competent to testify as to mental competence, generally, Naples v. United States, 120 U.S.App.D.C. 123, 344 F.2d 508 (1964), and as to competence to stand trial particularly, United States v. Bostic, 192 F.Supp. 170 (D. D.C.1961), rev. on other grds., 112 U.S. App.D.C. 17, 298 F.2d 678 (1961). See also 2 Wigmore Evidence § 568, pp. 664–665; 3 ibid. § 689; and 7 ibid. §§ 1933–1938. But none of these witnesses revealed any facts from which, individually or cumulatively, an inference that petitioner was not competent to stand trial could permissibly arise. At most this evidence established that petitioner suffered from more than normal anxiety, nervousness, and depression, and that he had been hospitalized in the Veterans Administration hospital for mental therapy. The hospital report, which arose out of that treatment, did not establish incompetency, but rather that petitioner was "an emotionally unstable individual, quite self-centered and inclined to be un-

truthful in many respects." The report contained a diagnosis of "anxiety reaction, chronic, moderate, manifested by tension, restlessness, tremors, and complaints of persistent vomiting, as well as self-preoccupation;" and concluded with an evaluation that he was "considered mentally competent for VA purposes."

■■ In opposition to the motion to vacate, the government called a clinical psychologist who was employed by the Bureau of Prisons at U. S. P. Leavenworth. This witness had participated in and supervised some of the studies and observations of the petitioner conducted pursuant to this court's sentence under 18 U.S.C. § 4208(b), and had briefly examined the petitioner himself. The purposes of a post-conviction examination under that statute do not extend to competency at trial and if the examiners narrowly construed their mission, the factual data obtained by them would not support an expert opinion as to petitioner's competency at the time of arraignment. However, the report furnished to the court, the other commitment and diagnostic materials and the testimony of the expert witness all indicate that not only did the examiners inquire into competency at the time of trial, but also criminal responsibility at the time of the offenses. In these circumstances there was an adequate factual basis for the opinion expressed by the witness as to petitioner's competency at all times relevant here. Johnson v. United States, supra; Birdsell v. United States, 346 F.2d 775 (5th Cir. 1965). That opinion was that petitioner was mentally competent at the time of arraignment and mentally responsible at the time that he committed the offenses.

The description of petitioner's personality and mental characteristics by this witness reveals that at the time of arraignment and at the time of examination at U. S. P. Leavenworth, he was of above average intelligence and fully competent. The infirmity from which he suffered was not one which affected his orientation, coherency, lucidity, respon-

siveness, ability to express himself or his ability to rationally and intelligently receive and comprehend information. Rather, petitioner's outstanding personality feature was a character disorder, one apparently arising from emotional immaturity and misplaced values which produced a desire to enjoy the fruits of society without undertaking the toil. When he failed to achieve the material and social success that he desired, he blamed his failures on other persons. The ultimate diagnosis was "sociopathic personality," as was the case in Birdsell v. United States, supra, and United States v. Lawrenson, 210 F.Supp. 422 (D.Md.1962).

From all of the evidence, it is beyond question, not only that petitioner failed to carry his burden of proving that he was mentally incompetent at the time of trial (or any other time), but that he was in fact competent at all relevant times. Petitioner had a factual and rational understanding of the charges brought against him and of the proceedings which culminated in his conviction and sentence. He was fully capable of comprehending the advice given to him before the court and elsewhere with respect to his constitutional rights, of rationally evaluating his situation in the light of that advice, of intelligently electing to forego the assistance of counsel, trial on indictment and trial by jury, and of freely, voluntarily, knowingly and understandingly entering pleas of guilty to the charges. Had he decided to enter pleas of not guilty and obtain counsel, petitioner would have been adequately capable of communicating with his attorney and of assisting in his defense.

In view of this finding, petitioner's claim that he was denied due process because a pre-trial sanity inquiry pursuant to 18 U.S.C. § 4244 was not conducted becomes unimportant. Although a failure to conduct a sanity hearing, on the court's own motion if necessary, may constitute a denial of due process when the defendant's present incompetence becomes sufficiently manifest during trial, and although the lapse of time since trial or other circumstances may require a new trial rather than a *nunc pro tunc* sanity hearing. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the circumstances of that case do not obtain here. There was no manifestation of mental aberration before the court at arraignment. Nor was the knowledge of officers of the court of such a nature as to require that a motion under section 4244 be made. Although petitioner apparently made a suicide attempt—or perhaps more accurately, a suicide gesture—that fact standing alone would not require inquiry into petitioner's competence to stand trial but only the taking of precautions to insure he did not try again. The information contained in materials obtained by the probation service in the course of its pre-sentence investigation could not be made available to the court or the prosecution before conviction. Moreover, examination of those materials shows that they would not have required a sanity inquiry even if ther contents had been known to the court, for they either contain no indication of mental aberration or they indicate that, while he had emotional and personality difficulties, petitioner was not incompetent. Finally, even if all the circumstances should have prompted a pre-trial inquiry, petitioner has not been prejudiced by any error in this regard. The conclusion here that he was in fact competent cures any such error. Cf. Willis v. United States, 109 U.S.App.D.C. 221, 285 F.2d 663 (1960); Ruebush v. United States, 206 F.2d 810 (10th Cir. 1953).

On its merits petitioner's motion to vacate will be denied, but, as noted earlier, no final order in this regard will be entered pending action by the court of appeals on the government's motion to dismiss the original appeal from the judgment of conviction.